Ezra Whitman, Jun'r, vs. Edward W. Robinson.

Dissolution of Partnership: Appointment of Receiver.—Where the bill, answer and exhibits show that the complainant and defendant were co-partners, equally interested in the property and business of the firm; and, by the articles, no time was limited for the continuance of the partnership, and the bill alleges that it was dissolved by consent on the 31st December 1862, which was denied by the answer, but it appeared that a dissolution was then contemplated and imminent; and the proceedings also disclosed a serious and irreconcilable disagreement between the parties, both as to the control and disposition of their property and effects, and their respective claims and demands against each other. Held:

That under these circumstances the action of the court in which the bill was filed, in continuing the injunction granted by it, and appointing receivers, was a provident exercise of equity power sanctioned by the authorities, and demanded by the exigencies of the case.

Appeal from the Circuit Court for Baltimore City :

The bill in this case was filed on 16th February 1863, and states that a partnership existed between the complainant and defendant for twelve years, under a deed filed with the bill, in which deed no term was limited for the duration of the partnership; that the partnership was dissolved by consent, on 31st December 1862; that the partnership assets were about $40,000; that there were debts amounting to about $4,000; and that the said deed provides that the debts shall be paid before a division of property; that the complainant claims that the firm owes him $17,000 irrespective of his half of the capital and profits of the firm; that the defendant is unwilling to settle with the complainant, and sets up certain pretentions which are unjust and inequitable; that the complainant had a right to dissolve the partnership; that a Court of Equity might have decreed it, even without cause; because no time was limited for its duration, and especially in this case for the causes which the complainant then sets out, among which are, that the partnership was not profitable, and the large amount due to the complainant, say $28,000, was unproductive and in danger of loss; and that the business was embarrassed,

Whitman, Jun'r, vs. Robinson.

some debts, having been due for a long time, on which interest was accumulating, and a distress had been levied for taxes. And the complainant charges the defendant with misconduct in drawing out $9,000, to buy certain land of one Merrill, intended for the benefit of the firm, but for which the defendant took a deed in his own name, and refused to convey title to one-half to the complainant, and that nevertheless the defendant never posted this money in the ledger, or in any manner charged it to himself; and further, charges misconduct in the defendant in drawing out large sums of money for his own private use, when the firm was greatly embarrassed and in need of money, and so preventing the complainant from getting his share of cash; and further misconduct in drawing out $1200 to lend to his, defendant's, brother, living in Maine, without the knowledge or consent of the complainant; and that the defendant besides drew out $5,000 or $6,000 more than the complainant.

The bill further charges, that the complainant claims $17,000 over and above his half of the profits, and complains of the mode in which this indebtedness accrued. That under these circumstances the complainant asked for a dissolution, more than three years ago; and again pressed it more than a year ago, and the defendant persuaded him to continue another year, to reduce stock and pay debts; and then, about 1st December 1862, the complainant asked the defendant to take an account, of stock, with a view to dissolution on the 31st December 1862, and they took some account of stock, and agreed to dissolve, but the defendant refused to adjust accounts, and refused to publish a dissolution, saying they would get through taking stock in a few days, and then publish the dissolution as of 31st December; and the defendant said he would keep a separate account of all orders and sales after 31st December, with a view to defendant's taking the store; but the complainant never assented to this; and again, the complainant urged the defendant to sign a notice of dissolution, but the defendant would not, but continued to carry

on the business, and set up a pretended claim against
the complainant, for not devoting his time to the business
of the firm, and yet the defendant never, during twelve
years, sought a dissolution on this account; nor did he ever,
until a year before the bill was filed, when a dissolution
was pressed for, make any complaints, and now he makes
it an excuse for not settling their partnership affairs.

The complainant then shews the manner of his attending
to the business of the firm, and that he was a laborious
hard working man in all its affairs; and charges that the
defendant seeks to inquire into the complainant's private
affairs, in which no capital of the firm was engaged, and
of a nature entirely different from the business of the firm.

The bill further states that the manufactory of the firm
lies idle, the defendant has possession of the books and pa-
pers of the firm, and is still selling and collecting, keeping
the store open and the sign up, and holding out the com-
plainant as a partner, and refusing to publish the dissolu-
tion; and he is buying new goods in his own individual
name, at the store of the firm in his own name.    That the
disagreement of the partners is such that they cannot act
in concert, and thereby the property of the firm is in
danger.

Upon this bill the Court granted an injunction *ex parte*,
and an order *nisi* for a receiver.

The answer filed on 21st February 1863, admits that the
partnership existed for twelve years from 1st January 1851,
to 31st December 1862, and contends that it continued un-
til the filing of the bill, and denies that it was dissolved
on 31st December 1863, saying that the partners were en-
gaged in arranging the terms of dissolution, to relate back
to that day; and it admits, that the defendant kept ac-
counts since that day in a separate book, so that they
might be treated as dealings of the firm or otherwise, but
it says he did this with notice to and without objection
from complainant.

Whitman, Jun'r, vs. Robinson.

It avers that the defendant intended to continue the business on his own account, and, if it could be so arranged, at the present place of business of the firm; that he refused to consent to a dissolution, until the terms could be arranged, and he could be placed in a condition to continue the business on his own account. That the assets of the firm are over $40,000 above its debts, which are about $4,000. That there are goods at the manufactory exceeding $4,000, which the defendant has urged the complainant to send to the store, but the complainant refused, and the defendant says he is unable to conjecture any reason, except a desire of complainant to suffer the debts to remain outstanding, with a view to this application for an injunction and receiver.

It admits that the defendant over-drew $4,600, and that the payments on land bought of Merrill, amount to not more than $7,000, so that complainant's claim cannot exceed $12,000 on these accounts. It admits that they have been negotiating for some time with a view to settlement of their affairs; but charges the complainant with fraud of the co-partnership articles by devoting his time to other pursuits, and says that the defendant offered to adjust the partnership account without prejudice to his right to sue the complainant at law for breach of the articles, but the complainant refused this offer, and so the defendant says the complainant designed to force him into an abandonment of his claim. It then tenders a proposal for an adjustment of the partnership affairs, not to be binding unless accepted before a hearing. And avers that the defendant is pained to believe that the complainant very largely under-valued the property at the factory, with a view to the complainant's taking it, as the complainant had proposed.

It accepts the filing of the bill as a dissolution, admitting the complainant's right to dissolve; but says he might have settled without a resort to a Court of Equity; and admits that the business is curtailed and the profits diminished, but denies that it is embarrassed or carried on at a loss;

5    v. 21

and gives a statement of the debts of the firm, and says they can be paid as presented. The answer then charges, that the complainant received a bill due the firm, which he promised to collect and apply towards the taxes, and says the defendant was ignorant that a distress had been levied, and charges that the complainant had pre-arranged that the distress should be made with the intent to give him a pretence and color for this present proceeding. That $7,000 was drawn out to buy land of Merrill, but it was with the complainant's privity and consent, and the complainant offered $2,500 *bonus* to make it partnership property. That the complainant afterwards found it convenient to deny this, and therefore the defendant released him and took the deed in his own name. That the payments were entered on the cash book, and were not posted to the defendant's account on the leger, because of the understanding with the defendant; and on the other hand, the adventure was not entered on the books as a joint one, because of the defendant's resolution not to consider it as such until the complainant paid him; and it admits that the complainant asked the defendant to put this matter on the books, but that he refused to put the same to his account on the requirement of the complainant, because the complainant had not brought in the moneys realized by devoting his time to other business. It contends that the defendant has not withdrawn his full share of profits; and admits that the defendant lent his brother $1200, and says that it may be that the advance was made without knowledge of the complainant, but it was charged on the books of the firm. It also admits that about a year ago some discussion occurred about a dissolution, and files letters with his answer; and that from the first to the last, the defendant refused to dissolve the firm unless the terms of dissolution should have been adjusted; and that he bought goods in his own name, but says that the complainant knew it, and that the defendant wished to take the store.

The answer then refers to the exhibits to shew, that the defendant claimed and complainant admitted, that the complainant had made profits for which he was accountable to the firm. And avers that the complainant has, for a number of years, been erecting buildings and making large profits, and neglecting the business of the firm, which required all his attention.

It admits that the factory is closed, and that up to the issuing of the injunction, the defendant was carrying on business as usual at the store; and the that defendant refused to dissolve, and after 31st December 1862, bought goods in his own name, hoping to agree upon terms of dissolution to relate back to that day.

It then says that the defendant will dispose of for his own account, all such goods; and as he cannot fill the orders received on account of the firm, he will proceed to execute the same out of his own stock. That he does not object to the adjustment of the partnership affairs under the direction of the Court, but objects to the injunction and to the appointment of a receiver. And he offers to collect outstanding debts and sell the goods at the factory if the complainant will send them to the store; and submits to the court his claim against the complainant.

The case was heard on motion to dissolve the injunction, and upon the rule *nisi* for a receiver upon the bill, answer and exhibits, without any commission to take testimony; and on the 5th of March 1863, the Court, (Krebs, J.,) filed an opinion, and thereupon continued the injunction and appointed receivers, and the defendant immediately appealed from all the orders.

The cause was argued before Bowie, C. J., and Bartol and Goldsborough, J.

*Thomas S. Alexander*, for the appellant :

The plaintiff having failed to show that the defendant was guilty of fraud or unrighteous conduct as a partner,

there is no ground laid for restraining him in the exercise of his rights as a partner, to retain possession of the partnership effects in his hands, to convert those effects into money, to collect the debts and to apply the same to payment of the partnership debts.

The defendant has not at any time interfered with, or restrained the complainant in his disposition or management of the effects of the firm in his the complainant's hands, and is quite content that he may continue his possession of said effects, and sell them subject to account in this Court.

Under circumstances like those which are made apparent by the record, the proper remedy is a decree for an account, and with authority to each partner to sell the effects in his hands under the Court's directions; if the Court shall be of opinion that the complainant is entitled to a sale of all the joint effects; or if the Court shall be of the opinion with the defendant, that the defendant is entitled to a division of the effects not manufactured for sale, then with authority to hold and apply the effects in his hands as receiver subject to the directions of the Court.

It is competent for the Court to appoint either partner as receiver if there is no sufficient ground for his exclusion; and where the joint effects have been distributed between the partners during the continuance of the business with a view to its convenient prosecution, the Court may treat each partner as receiver of the effects thus in his hands, and avail itself of his agency in realizing that portion of the joint effects which has been by mutual consent confided to his management. *Drury vs. Roberts,* 2 *Md. Ch. Dec.,* 157. *O'Bryan vs. Gibbons,* 2 *Md. Ch. Dec.,* 9. *Walker vs. House,* 4 *Md. Ch. Dec.,* 45. *Harding vs. Glover,* 18 *Ves.,* 281. *Speights vs. Peters,* 9 *Gill,* 472. *Fingall vs. Blake,* 2 *Moll.,* 50. *Meaden vs. Sealey,* 6 *Hare,* 620. *Blondheim vs. Moore,* 11 *Md. Rep.,* 365.

*E. O. Hinkley*, for appellee:

The unrighteous behaviour of defendant was—

1. Lending his brother money.

2. Drawing out money to buy land, and refusing to post it in the ledger, either to account of the firm or to his own account.

3. Refusing to dissolve the firm, after he had plainly agreed to it, on 31st December 1862, until he could get the business for himself.

4. Refusal to make any settlement until he could make arrangements for *his own* future business, without regard to the complainant.

5. Seizing on the business of the firm, and buying new goods in his own name, at the same time that he had refused to dissolve—simply because he wished to carry on the same business, and, as he says in his answer, *in the same store*—thus acting a *double part*—taking an undue advantage of the complainant, and indeed excluding him from his proper rights as a partner, while he still professed to hold him bound as a partner.

Supposing, for the sake of argument, that the lending money to a brother was no very great fault, or was forgiven, and that all the faults of defendant which had been committed during the existence of the partnership had been forgiven, still there remains all the unrighteous behavior after 31st December 1862, for after that day what excuse can be given for these things, viz:

1. Still refusing to post the account of the money drawn out to buy land, although he had long before taken *the deed in his own name.* Was it not a necessary item in any settlement which possibly could be made?

2. Refusing to dissolve, after agreeing to do so.

3. Acting the double part of holding the complainant still liable as his partner with the sign up, and yet buying goods in his own name. This single act of buying goods in his own name, while refusing to dissolve, is sufficient alone to condemn the defendant. It is inexplicable upon

any principle of fair dealing with a partner—any principle of justice. It was tantamount to exclusion. It was unrighteous—unjust.

The lien of creditors, say $4,000, and the lien which the complainant has on the partnership effects for $12,000, due to him, is to be made effectual by receivers.

All the material allegations of the bill entitling the complainant to the relief prayed, are fully admitted; and it is to be observed, that all the averments in a bill not denied in the answer, must, in cases of injunctions, be taken to be true. *Washington University vs. Green,* 1 *Md. Ch.,* 106. And if any material allegation remains unanswered, the injunction will be continued. *Brown vs. Stewart,* 1 *Md. Ch.,* 93. On motion to dissolve, the defendant can only rely upon so much of the answer as is responsive to the bill, and matters in avoidance cannot be allowed to have any effect. *Drury vs. Roberts,* 2 *Md. Ch.,* 160. 3 *Bland,* 445.

*I. Nevitt Steele,* for appellee:

What is the appeal to be tried? The appeal is as well from the refusal to dissolve the injunction as the order granting the injunction. The appeal from the latter order ought to be dismissed. When a party voluntarily proceeds beyond that stage of the case where an appeal from the order granting the injunction has passed, and an answer been filed and used, the appeal should be dismissed.

The decision in *Blondheim vs. Moore,* 11 *Md.,* as to the effect of filing an appeal bond, does not apply to our case. 1 *Md. Ch.,* 106. 1 *Md. Ch.,* 93. 2 *Md. Ch.,* 168. 3 *Bl.,* 445.

The bill alleges distinctly that the partnership was dissolved on the 31st December. The answer admits the dissolution by the bill filed, and says that the defendant will thereafter treat the partnership as dissolved. Letters, Exhibits M, N, O and P, relate to the dissolution. P is a copy of the letter filed with the bill.

Letter P speaks of a *mutual agreement or understanding* that the dissolution should take place on the 1st of January thereafter. How can the appellant avoid the conclusion that the partnership was dissolved on the 1st of January? We have a right to assume that the dissolution of the partnership was on the 31st of December, and not on the filing of the bill in February. This is only important as to the conduct of Whitman during the interim.

Disagreement is a sufficient ground for interference of a Court of Equity. *Law vs. Ford*, 2 *Paige Ch. Rep.*, 310. *Martin vs. Van Shaick*, 4 *Paige Ch. Rep.*, 479. *Sloan vs. Moore*, 37 *Penn.*, 217. *Walker vs. House*, 4 *Md. Ch.*, 43. *Speights vs. Peters*, 9 *Gill*, 476–479.

The doctrine of imminent danger to property, and the reluctance of Courts of Equity to interfere, do not effect this case, where both parties have the same legal right. There was not only disagreement in this case, but on the part of Whitman, fierce malignity. Is there not evidence of *irreconcilable disagreement* in the bill, answer, and exhibits,— *permanent* disagreement? The bill alleges it, and if it could be afterwards doubted, the answer, by its tone of fierce malignity, leaves no room to doubt it. The answer says, "is greatly pained," &c. The answer shuts the door to anything like an amicable business association of the partners. The efforts of Robinson to settle the business without controversy, is apparent from the outset.

There is a disagreement between the partners as to the amount of Whitman's debt, of about $5,000—Robinson claiming interest, and Whitman objecting to pay interest. Whitman claims that there is more than an equal amount due by Robinson as the proceeds of work done by him outside of the firm's business. They could not agree as to the principle of the division—Whitman claiming an equal division of the assets without reference to his debt—claiming that Robinson should rely on his personal security for that debt.

*Collyer on Part.*, cited in 9 *Gill*, 480, says: If one party seeks to exclude another from the share of participation in the partnership, &c., there is ground for interference and a receiver.   The loan by Whitman to his brother, without the consent of Robinson, was a fraud on his rights.   Whitman kept the store and kept the books, and should have communicated the fact of the loan to his partner, and not have left him to find it out from the books.

The application of the funds of the firm to the purchase of land, Whitman taking the deed to himself, was a fraud on Robinson, Whitman never having charged himself with the $7,000 on the books up to this time.   It was one of the grossest breaches of trust that could be committed in the management of the partnership books.

Heretofore we have spoken of the conduct of Whitman prior to the dissolution.   We now come to speak of his conduct afterwards:

He buys goods in his own name, refuses to publish the dissolution, says he keeps the entries of his anomalous transactions separate, and assumes to go on in his way until the appellant should consent to his terms.

The lien of Mr. Robinson and other creditors could only be preserved by the appointment of a receiver.

*Thos. S. Alexander*, for the appellant, in reply:

The causes of disagreement are insufficient to justify these proceedings.   There is no point of difference that could not have been settled by the attorneys of the respective parties in ten minutes.   There is no controverted fact in the case—the only difference being as to the construction of the articles of co-partnership.

The value of the *time abstracted* by Robinson, which is conceded to have been done, could have been settled.

The difficulty of the propriety of a sale, a division of the effects, depends on an article of the co-partnership, which any two business-men could have settled in half an hour. *Can. Co. vs. R. R. Co.*, 4 *G. & J.*, 1.   *Amelung vs. Seekamp*, 9 *G. & J.*, 468.

Whitman, Jun'r, vs. Robinson.

Under the Code, an appeal lies from an order granting an injunction, and an order continuing an injunction.

In *Yeatman & Stevens*, there was a waiver as to the appointment of a receiver. The appointment of receiver is not a matter of course. The Equity Practice of Baltimore City is not the Equity Practice of the Court of Chancery or State of Maryland. *Blondheim vs. Moore*. The pleadings in this case, the universal sense of the profession, and the case of *Blondheim & Moore*, shows that the appointment of receiver is not a matter of course, on dissolution of an injunction. To the same effect are *Creshay vs. Mawle*, 1 *Swanst.*, 196. 9 *Gill*, 472, 476, 495. 2 *Md. Ch.*, 157. *Ib.*, 9. This is the law of Maryland. Of what moment is it what is decided in 2 *Paige*, if the contrary has been settled in Maryland. In 4 *Paige*, the ground was not the broad ground assumed in this case, but the specialties of that case.

A Court never interferes in a case of partnership to appoint a receiver, unless where fraud or misconduct—unrighteous conduct—is alleged, or there is danger of loss or destruction of the property. Whitman had not drawn out more than his share of profits. Under the partnership agreement, he had the right to withdraw *all his share of the profits*, or neither party had a right to draw out a dollar.

Why could not *Robinson* have advertised a dissolution? One of the articles of the agreement was, that in case of dissolution, neither party, within six years, should practice at the locality of the place of business the former pursuit of the other. Robinson's former pursuit being that of an architect, and Whitman's that of an agricultural implement maker.

As to the causes of offence prior to December 31st, 1861, the bill states the entry on the cash-book of the withdrawal of the $7,000, and therefore Robinson had notice of it.

BARTOL, J., delivered the opinion of this Court:

In the case of *Law vs. Ford*, 2 *Paige's Ch. Rep.*, 310, Chancellor Walworth decided: "That where either party

6	r. 21

has a right to dissolve the partnership, and the agreement between the parties makes no provision for closing up the concern, it was of course to appoint a manager or receiver, on a bill filed for that purpose, if they could not arrange the matter between themselves."

That was a case of an application for the appointment of a receiver, to dispose of the effects, and close up the concerns of a partnership, on a bill filed by one partner against another. The application was resisted on the ground that the partner who was in possession of the partnership books and effects, was willing to give security for the faithful application of the effects in payment of debts, &c.

A similar decision was made by the same Chancellor in *Marten vs. Van Schaick & Bloodgood*, 4 *Paige's Ch. Rep.*, 479. There a bill was filed by one or more partners for the purpose of dissolving a partnership, and to settle the partnership accounts and distribute the property and effects of the firm. The appointment of a receiver was opposed on the ground that "the principal value of the property consisted in the good will of their business, which it was alleged would be lost by the appointment of a receiver."

The Supreme Court of Pennsylvania in the case of *Sloan vs. Moore*, 37 *Penna. Rep.*, 217, recognized the same rules for the guide of a Chancery Court, in the appointment of a receiver of partnership effects, where a dissolution has taken place, or is intended. On page 222, the Court say: "Indeed it is difficult to see, how the necessity of a receiver can be avoided on the dissolution of a partnership, where the parties cannot agree as to the disposition of the joint effects, for no one has a right to their possession and control superior to that of the other."

The same principle was recognized by Chancellor Johnson, in the case of *Walker, Adm'r, vs. House*, 4 *Md. Ch. Dec.*, 43. Where the learned Chancellor after citing the decision in *Law vs. Ford*, says: "This appears to be reasonable, because as a general rule each partner has an equal right to the possession of the partnership effects, and

to collect and apply them in satisfaction of the debts of the firm.''

The rules laid down in the case of *Blondheim vs. Moore*, 11 *Md. Rep.*, 365, as governing Courts of Equity in Maryland, in appointing a receiver, are in our opinion inapplicable to such a case as this. That was a bill filed by a creditor, and the interference of the Court was invoked, to divest the possession of property from one having the legal estate, and to place it in the hands of a receiver, in such case it was held that fraud or imminent danger must be proved; here, the application is made by one having the legal estate, entitled to an equal right to the possession. In *Speights vs. Peters*, 9 *Gill*, 479, the Court of Appeals after stating ''that against the legal title in the defendant, the Court would interfere with great reluctance, and only when the property was in danger of being materially injured or lost,'' proceeds to say: ''But in respect of a fund which is claimed, and is *prima facie*, the proceeds of a partnership, it is but a provident exercise of equity power to place the property under the care of the Court.''

These authorities, and the reasoning on which they rest, seem to us to be conclusive of the questions presented by this appeal.

The bill, answer and exhibits show, that the appellant and appellee were co-partners, equally in intererest in the property and business of the firm. By the articles, no time was limited for the continuance of the partnership; and it was therefore liable to be dissolved at the instance of either party. The bill alleges that it was dissolved by consent on the 31st day of December 1862; this is denied by the answer; but it manifestly appears, that a dissolution was then contemplated and imminent, and it is conceded that the filing of the bill operated a dissolution.

The proceedings also disclose a serious, and apparently irreconcilable disagreement between the parties, both as to the control and disposition of their property and effects, and their respective claims and demands against each other.

Under these circumstances the action of the Circuit Court in continuing the injunction and appointing receivers, was, in our opinion, a provident exercise of equity power, sanctioned by the authorities and demanded by the exigencies of the case.

It is not necessary in the decision of this appeal, nor would it be proper in the present state of the record, to express any opinion upon the several charges of misconduct alleged by the parties against each other, or upon the state of their accounts, respectively, with the firm. These will more properly be considered and decided upon the final hearing of the cause.

A decree will be signed affirming the orders of the Circuit Court, with costs to the appellee, and remanding the cause.

*Orders affirmed and cause remanded.*

