### EINSTEIN v. SCHNEBLY.

(Circuit Court, S. D. California. August 16, 1898.)

#### No. 771.

1. EQUITY PLEADING—UNCERTAINTY IN BILL—MODE OF ATTACKING.
    The objection that a bill is deficient in certainty must be raised by demurrer, and cannot be taken by motion.

2. SAME—LACK OF CERTAINTY IN ALLEGATIONS—STATEMENT OF CONCLUSIONS.
    In a bill for the dissolution of a partnership the business of which had been under the immediate management of defendant and his agent, allegations that by reason of the diversion of funds and the extravagant management of defendant and his agent the income had been insufficient

to pay the expenses, and that it would have been sufficient with careful and economical management, without stating any specific facts, are demurrable as but statements of opinion.

**3.** SAME:—PLEADING CONSTRUCTION OF CONTRACT.

Where a bill claims relief based on written agreements which are not free from ambiguity, it is proper to set them out in full in the bill, together with the construction placed upon them by the plaintiff.

**4.** PARTNERSHIP—SUIT FOR DISSOLUTION—SUFFICIENCY OF GROUNDS.

A bill setting out an agreement between plaintiff and defendant, as the owners in common of a ranch, to improve the same in partnership, the plaintiff to advance the money needed, and the defendant to supervise the work, and which alleges that plaintiff has advanced thereunder over $60,000, none of which has been repaid, and that defendant's agent, employed in his stead to superintend the work, and acting as such agent, has excluded plaintiff from any voice in the management of the business, and threatens, and is proceeding, to make improvements against plaintiff's advice and protest, for which, under the agreement, plaintiff is bound to pay, states sufficient ground for the dissolution of the partnership.

**5.** SAME—EMPLOYMENT OF AGENT BY PARTNER.

Where one partner employed an agent to perform duties which devolved upon him under the partnership agreement, as between him and his copartner he is responsible for the acts and conduct of such agent relating to the matter of his employment.

**6.** SAME—ACTION FOR DISSOLUTION—RECEIVER.

Plaintiff and defendant entered into a partnership agreement to improve, develop, and plant to fruit a ranch owned by them in common, by which plaintiff was to advance the money needed, to be repaid from the income, and defendant, by himself or agent, agreed to superintend the work, his services in so doing to be as an offset to the interest on plaintiff's advances. *Held*, that such agreement did not give defendant the management of the ranch and its improvement to the exclusion of plaintiff, and that the exclusion of plaintiff from any voice in such management by defendant and his agent, and the making of improvements in disregard of plaintiff's wishes and objections, were grounds for the appointment of a receiver.

Opinion of the court on demurrer to the amended bill of complaint, motion that parts of said bill be made more certain, and application for receiver.

R. R. Bigelow and G. W. Baker, for complainant.

Oscar A. Trippet, for defendant.

WELLBORN, District Judge.    This is a suit for the dissolution and winding up of the affairs of a partnership, and for the appointment, in the meantime, of a receiver.    The bill alleges as follows:

That on March 1, 1888, E. M. Frank, complainant's assignor, entered into a contract with F. F. Adams, defendant's assignor, of which the following is a copy:

"This agreement, made and entered into the first day of March, A. D. 1888, by and between E. M. Frank, party of the first part, and F. F. Adams, party of the second part, both of the county of San Diego, in the state of California, witnesseth: Whereas, the said parties own, as tenants in common, a certain farm or ranch, called the 'Hicks Place,' situated about two miles east of the village of Fallbrook, in said county, and containing four hundred and eighty-eight acres, more or less, and are desirous of improving the same, and developing the productive capacity thereof, therefore, it is agreed by and between the said parties that the said first party shall ad-

vance the necessary capital and money for the purpose of improving the said ranch, planting olive, orange, and other trees, and developing water thereof, and making other betterments upon the same; and that said ranch shall be so improved, the present cost of such improvement being defrayed by the said first party; that the said party of the second part shall devote so much of his time and attention as may reasonably be necessary and proper in the oversight and supervision of such improvements and the making of the same, and the general development of the said ranch as the betterment thereof shall proceed by the expenditure of the capital of the first party as aforesaid; that the said party of the first part shall charge no interest for the money and capital invested by him in the improvement of said ranch, but the interest on the capital so employed shall be considered as offset and compensated for by the time and attention to be given to the supervision of the work of such improvement by the said second party, as above stipulated. The said party of the first part, however, shall receive and be repaid the capital and money so to be by him advanced for the purposes aforesaid out of the net returns and proceeds to arise from the improvements, tree plantations, and other betterments to be made on said ranch, pursuant to this agreement, and the said party of the second part shall not be entitled to participate in such net returns and proceeds until the whole of the said capital advanced by the first party as aforesaid shall have been repaid to him, the said first party; but, when said first party shall have been so repaid the whole of his advances for the purposes aforesaid, thereafter the income and returns from such improvements shall be divided equally between the said parties, and they shall share equally the cost and expense and labor of the supervision of the said ranch so improved. It is understood that the foregoing agreement does not relate to the ordinary annual cropping of said land in which the said parties are engaged. As to such annual croppings, the said parties bear equally the burden and expense of the same, including the work of the superintendence, and share equally in the profits. In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written. In duplicate.                                                             E. M. Frank.
                                                                 "F. F. Adams."

That afterwards, on September 19, 1891, the parties to said contract purchased other tracts of land, amounting to 160 acres, for their mutual interests, and which were also held and occupied by them as co-partners under the terms of said contract. That immediately after the making of said contract said Frank and Adams proceeded to fence said lands, and plant the same with a variety of fruit trees, consisting of orange, olive, apricot, and lemon, and other trees and vines, to the extent of 200 acres; to erect on said lands all necessary houses, barns, and other buildings suitable for the purposes contemplated in said contract; to provide conveniences for the cultivation of said land, and water rights, pipes, reservoirs, aqueducts, and other irrigating facilities, pursuant to the ends and objects of said agreement. That the improvements made on said lands, aside from the trees and vines, consist of a dwelling house and furniture, which cost about $4,500; a barn, granaries, sheds, mess house, and other outbuildings, which cost about $3,500; a reservoir, water pipe, tunnel, and other appurtenances, including a suction engine and pump, which cost about $6,000; the necessary fencing of said land, which cost about the sum of $2,000, —amounting in all to the sum of $16,000,—said improvements being of a permanent nature, and of such character that no revenue could be derived from them except as they contributed to the market value of said land. That all of said improvements were paid for by funds advanced by said E. M. Frank and the complainant. That on July

30, 1891, said Frank and Adams entered into a further agreement, in words and figures following:

"This supplemental agreement by and between F. F. Adams, of San Diego county, California, and E. M. Frank, of San Francisco, California, made and entered into this 30th day of July, A. D. 1891, witnesseth: That whereas, on March 1st, 1888, an agreement was entered into by the above parties reciting all facts regarding ownership and management of the certain ranch known as the 'Red Mountain Ranch,' near Fallbrook, in San Diego county, California; and whereas, in that agreement, E. M. Frank did agree to advance all necessary moneys for the purpose of putting said 'Red Mountain Ranch' in productive position, and that said moneys so advanced by said E. M. Frank were to be paid back to said E. M. Frank out of the first products of the place, and to be, in fact, a lien upon said ranch until so paid: It is hereby mutually understood by the parties to this agreement that the amount so advanced up to date is the sum of thirty-three thousand six hundred and forty-eight and $^{10}/_{100}$ ($33,648.10) dollars, subject to all the provisions of the agreement of March 1st, 1888. In witness whereof, we have hereunto set our hands and seals this 30th day of July, A. D. 1891.

"F. F. Adams.
"E. M. Frank."

That on December 6, 1892, said Frank, by and with the consent in writing of said Adams, sold and assigned to the complainant all of his right, title, and interest in said partnership and said land, and said agreements of March 1, 1888, and July 30, 1891, and all moneys theretofore advanced by him under said agreements; and thereafter complainant and said Adams became partners in said property, and complainant continued to advance all necessary moneys under said agreements, and in all respects carried out said agreements. That on January 8, 1896, said Adams sold and assigned all his right, title, and interest in said partnership and lands and said agreements to the defendant, F. D. Schnebly. That on April 24, 1896, complainant and defendant entered into the following agreement:

"This agreement, made and entered into this 13th day of April, 1896, between F. D. Schnebly and Jacob Einstein, witnesseth: That whereas, on the 1st day of March, 1888, the real estate hereinafter described was owned and held in co-tenancy by F. F. Adams and E. M. Frank, each owing one undivided one-half thereof, and on said day they entered into an agreement of which the following is a copy:

" 'This agreement, made and entered into the first day of March, A. D. 1888, by and between E. M. Frank, party of the first part, and F. F. Adams, party of the second part, witnesseth: Whereas, the said parties own, as tenants in common, a certain farm or ranch, called the "Hicks Place," situated about two miles east of the village of Fallbrook, in said county, and containing four hundred and eighty-eight acres, more or less, and are desirous of improving the same, and developing the productive capacity thereof, therefore it is agreed by and between the said parties that the said first party shall advance the necessary capital and money for the purpose of improving the said ranch, planting olive, orange, and other trees, and developing water thereof, and making other betterments upon the same; and that said ranch shall be so improved, the present cost of such improvement being defrayed by the said first party: that the said party of the second part shall devote so much of his time and attention as may be reasonably necessary and proper in the oversight and supervision of such improvements and the making of the same, and the general development of the said ranch, as the betterment thereof shall proceed by the expenditure of the capital of the first party as aforesaid; that the said party of the first part shall charge no interest for the money and capital invested by him in the improvement of said ranch, but the interest on the capital so employed shall

be considered as offset and compensated for by the time and attention to be given to the supervision of the work of such improvements by the said second party as above stipulated. The said party of the first part, however, shall receive and be repaid the capital and money so to be by him advanced for the purposes aforesaid out of the net returns and proceeds to arise from the improvements, tree plantations, and other betterments to be made on said ranch, pursuant to this agreement, and the said party of the second part shall not be entitled to participate in such net returns and proceeds until the whole of the said capital advanced by the first party as aforesaid shall have been repaid to him, the said first party; but when said first party shall have been so repaid the whole of his advances for the purposes aforesaid, thereafter the income and returns from such improvements shall be divided equally between the said parties. and they shall share equally the cost and expense and labor of the supervision of the said ranch so improved. It is understood that the foregoing agreement does not relate to the ordinary annual cropping of said land in which the said parties are engaged. As to such annual cropping, the said parties bear equally the burden and expense of the same, including the work of the superintendence, and share equally in the profits. In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written. In duplicate.                     'E. M. Frank.
                                                                  " 'F. F. Adams.'

"—And whereas, on or about the 6th day of December, 1892, the said E. M. Frank bargained, sold, conveyed, and assigned all his right, title, and interest in and to the said real estate therein described, and in and to the aforesaid agreement of March 1, 1888, and of all moneys advanced thereunder to the said Jacob Einstein; and whereas, on the 8th day of January, 1896, the said F. F. Adams bargained, sold, conveyed, and assigned all his right, title, and interest in and to the said real estate, and in and to the aforesaid agreement of March 1st, 1888, and of all his rights thereunder, to F. D. Schnebly, above named: Now therefore, it is agreed that the said E. M. Frank and Jacob Einstein have, by virtue of said agreement, advanced the sum of $58,695.30 on and up to April 1st, 1896, in pursuance of the stipulations of said contract, and the said F. F. Adams has carried out the stipulations of said contract upon his part, and the parties hereto agree to continue the operation of said contract, and this agreement is made for the purpose of ratifying and confirming the aforesaid conveyances, agreements. and conditions as between the contracting parties hereto. And it is agreed that the said F. D. Schnebly, by himself or his agent, shall perform the obligations and conditions imposed upon the said F. F. Adams in the aforesaid agreement of March 1st, 1888, and that the said Jacob Einstein shall on his part carry out the terms and conditions of said agreement in so far as the same was made to bind said E. M. Frank, and the money so advanced in pursuance of said agreement shall be repaid the said Jacob Einstein as provided for in the said agreement of March 1st, 1888. This agreement shall bind the heirs, executors, administrators, and assigns of the respective parties. In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.
                                        "F. D. Schnebly. [Seal.]
                                        "Jacob Einstein. [Seal.]"

That thereby it was agreed between the said parties that the moneys so advanced by the complainant and his assignor should be a lien upon said premises and all the property subsequently. acquired under said agreement, and it was there agreed that all property, real and personal, then owned by them, and all property subsequently acquired by them under said agreement, should be holden for the repayment to the complainant of all moneys so advanced by him to said co-partnership. That complainant and his assignor have duly performed all the conditions of said agreements on their part to be kept and performed. That the advances of money made by said Frank and the

complainant under said agreements prior to the 24th day of April, 1896, amounted to $58,695.30, and that since said last-named date complainant has advanced the further sum of $5,535.07, and that there is now due and owing to complainant, on account of said advances, the sum of $64,230.37, all of which the parties to this action agreed should constitute a lien upon all of the lands and personal property of said partnership. That neither the defendant nor his assignor, said Adams, has ever advanced any money whatever under said agreements, and that the defendant has never resided on or near said premises, nor taken any active interest in the management thereof, or in making improvements thereon, but has intrusted the same entirely to the said Adams, whom he has appointed his agent for that purpose. That as such agent said Adams has assumed and arrogated to himself the entire management of said land and the improvements thereon, and excluded complainant from any voice in said management and conduct of said business, and has shown himself in every way inimical to the complainant and his interests. That said Adams has refused to listen to the advice or suggestions of this complainant as a copartner concerning said business, or to consult with him in regard to said management, or the making of improvements upon said ranch, and has incurred, and is still incurring, large expenses unnecessarily in the management of said ranch, and is now constructing thereon a large packing house, at a cost of more than $1,000, at the expense of complainant, and is threatening to make other improvements thereon, aggregating a cost of $10,000 to $12,000, all of which complainant believes to be entirely unnecessary and unadvisable, and against which he has protested and objected, but, notwithstanding said protest, said Adams has informed complainant that he will manage the partnership affairs to suit himself, without any interference from complainant, and will construct said packing house and make all other improvements upon said premises that he deems proper or requisite, at complainant's expense, without any regard to complainant's wishes in the premises, and that he would not submit to any interference upon the part of complainant. That said defendant keeps said Adams and his family upon said premises, occupying the dwelling house thereon, for which he pays no rent; and that defendant and said Adams have diverted large sums of money, furnished by complainant for the purpose of making improvements upon said premises, to the purpose of paying and defraying the personal and family expenses of said Adams, amounting at the time of the filing of the bill to the sum of $5,780. That neither the defendant nor Adams has at any time paid any portion of the taxes annually laid upon said property, amounting to the sum of $600 up to June 1, 1897, but the whole thereof has been paid by said Adams and defendant out of the moneys provided by complainant and his assignor for the purpose of making improvements on said ranch; and defendant asserts and claims that complainant must, under said agreements, continue to pay all of the taxes and other expenses incurred upon said ranch, or in connection therewith, either for improvements or otherwise. That defendant has employed many more laborers upon the place than were necessary to the careful and economical management thereof, and against the earn-

89 F.—35

est protest of complainant. That by reason of the extravagant management of said land under the supervision and control of said Adams, and the diversion of the money furnished by the complainant to the family expenses of the said Adams, the product derived from the operation of said ranch and premises has never been sufficient to pay the annual expenses of carrying on the ranch, and said ranch has continually required the advancement of moneys upon the part of the complainant, in addition to that derived from the sale of the crops produced thereon, to pay the running and operating expenses of the ranch. That about 200 acres of said land is now set out in olive and other fruit trees and vines, of which over 100 acres are and have been bearing for two years, but, notwithstanding this fact, owing to the extravagant management of defendant, through said Adams, said crops have not yielded a sufficient income to pay the expenses of producing the same; and that complainant believes, and so charges the fact to be, that said crops will never pay the expenses of running said ranch under the management of said Adams, and that complainant will never, without a sale of the premises, be repaid the large sums of money expended by him thereon, and that he will continually be called upon to provide more funds for the purpose of paying the running expenses and improvements constantly being made upon said ranch. That, in order to make the fruit trees which are upon this ranch profitable, it requires prudent and economical management, and that under the management of the defendant and his agent, said Adams, said ranch will never pay from the crops produced thereon anything over and above the running expenses thereof. That, had said ranch and business been managed in a careful and economical manner, it would, for the years 1895 and 1897, from the produce thereon, have paid the expenses of running the same, and of making all improvements necessary to be made thereon, and would have done the same for the year 1896, but for a partial failure of the crop, and by such economical management would soon be producing a net profit, that could be applied to the payment to the complainant of the money so due him, as aforesaid. That complainant believes, and upon such belief alleges, that it is the purpose and intention of defendant and his agent to keep the running expenses of said ranch, and the cost of improvements thereon, at such an amount above the income to be derived therefrom that it will never, without a sale of the premises, repay to complainant any part of the moneys advanced by him under said agreement, and to thereby compel him to lose all of the investment which he has made in said ranch. That for the purpose of cheating and defrauding the complainant said Adams has rendered false statements of the expenses of said ranch and improvements placed thereon, in which large sums of money have been charged for the hire of laborers employed upon said ranch who have not been employed thereon, and no such expense has been incurred by said Adams, and for which complainant, not knowing that such statements were false, and that such laborers had not been employed, and being deceived by said statements, furnished the money for their payment, which money was appropriated to his own use by the said agent of defendant. That for the purpose of cheating and defrauding complainant said

Adams has disposed of large quantities of the products of said ranch, with the purpose and intention of appropriating the same to his own use, and for which he did not account until the fraud was discovered by complainant, and he was charged with the same. That for the purpose of carrying on the operations of this co-partnership upon this ranch, and of making improvements thereon, and raising the different crops of fruit and other products grown upon said ranch, complainant and defendant, and their respective assignors, have purchased at different times, and there is now upon said ranch, a large amount of personal property, consisting of cattle, horses, harness, wagons, agricultural machinery and implements, household and kitchen furniture, of the value of $4,000, all of which have been paid for out of the moneys so furnished by complainant and his assignor, and which are now owned by complainant and defendant as co-partners.

The prayer of the bill is for a dissolution of the partnership, a sale of all the property belonging thereto, payment of the partnership debts, including those due to the complainant, and an equal division of the surplus, if any, between complainant and defendant, and for the appointment of a receiver to take and hold and manage said property during the pendency of the suit. Defendant has filed a motion to require the complainant to make more certain the allegations of the bill which charge misconduct on Adams. A demurrer has also been interposed to said allegations on the ground that they are uncertain, and to the whole bill on the ground that it does not state a case for equitable relief. Said motion, demurrer, and application for the appointment of a receiver are now under submission, and will be disposed of in the order in which I have stated them.

## Motion.

The objection that a bill is deficient in certainty should be raised by demurrer. 1 Daniell, Ch. Prac. (6th Ed.) 369, 372, 562. The decision in Conroy v. Construction Co., 23 Fed. 71, cited by defendant, was based upon a code provision, while in Johnson v. Machine Co., 25 Fed. 373, the motion was denied. Besides, both cases were common-law actions. The motion to require complainant to make more certain the allegations mentioned in the motion will be denied.

## Demurrer.

Defendant demurs to the following allegation of the bill: "That said F. F. Adams has refused to listen to the advice or suggestions of this plaintiff as a co-partner concerning said business, or to consult with him in regard to such management or the making of improvements on the ranch," on the ground that said allegation is uncertain in not fixing the date when said Adams refused to listen to the advice or suggestions of plaintiff, and whether or not said Adams so refused while he was defendant's agent. The fair inference from this allegation, read in connection with its immediate context, is that it relates to the period of time during which Adams has been acting as defendant's agent, and the demurrer thereto will be overruled.

Defendant also demurs to the following allegation: "That defendant and said Adams have diverted large sums of money furnished

by this plaintiff for the purpose of making improvements upon said premises to the purpose of paying and defraying the personal and family expenses of the said Adams, amounting at this date to the sum of $5,780," on the ground that it is uncertain in not stating how much defendant diverted and how much Adams diverted, and when said diversions were made, and whether by said Adams while agent for defendant. Defendant contends that misconduct of Adams prior to the commencement of the partnership between the complainant and the defendant could be no ground for a dissolution of the partnership, and that, the time of the misconduct being thus material, failure to allege it makes the bill uncertain. This argument, however, leaves out of view the fact that one of the grounds upon which complainant seeks a dissolution is that the defendant has violated, and is persistently violating, the partnership contract, by keeping on the ranch an unreliable and otherwise incompetent agent. Besides, it must be remembered that complainant seeks not only a dissolution of the partnership, but also the appointment of a receiver. For both of these purposes misconduct of Adams in connection with the ranch is proper matter for consideration, whether it occurred before or after the partnership between complainant and defendant, and therefore date of occurrence is immaterial. The demurrer to that part of the bill last quoted is overruled.

Defendant also demurs to the following allegation: "Your orator further shows that by reason of the extravagant management of said land under the supervision and control of said Adams, and the diversion of the money furnished by this plaintiff to the family expenses of the said F. F. Adams, the product derived from the operation of said ranch and premises has never been sufficient to pay the annual expenses of carrying on the ranch, and said ranch has continually required the advancement of moneys upon the part of this plaintiff in addition to that derived from the sale of the crops produced thereon to pay the running expenses and operating expenses of the ranch,"— upon the ground that said allegation is uncertain in not stating when it was that Adams was extravagant, and when he made the diversions therein alleged, and in not stating what constituted said extravagance. This allegation is but the statement of an opinion, and is defective in not setting forth the acts constituting the extravagance of Adams, and the demurrer thereto will be sustained.

Defendant also demurs to the following allegation: "Whereas, as your orator alleges, had said ranch and business been managed in a careful and economical manner, it would, for the years 1895 and 1897, from the products thereof, have paid the expenses of running the same and of making the improvements necessary to be made thereon," on the ground that it is uncertain, because it fails to state wherein the ranch was not carefully managed. This allegation is also objectionable for the reasons last stated, and the demurrer thereto will be sustained.

Defendant also demurs, on the ground of uncertainty, to the following allegations of the bill:

"Your orator further shows that for the purpose of cheating and defrauding the plaintiff the said Adams has rendered false statements of the ex-

penses of said ranch and of the improvements placed thereon, in which large sums of money have been charged for the hire of laborers employed upon said ranch who have not been employed thereon, and no such expenses have been incurred by said Adams, and for which the plaintiff, not knowing that such statements were false, and that such laborers had not been so employed, and being deceived by said statements, furnished the money for their payment, which money was appropriated to his own use by the said agent of the defendant. Your orator further shows that for the purpose of cheating and defrauding the plaintiff the said F. F. Adams has disposed of large quantities of the products of said ranch with the purpose and intention of appropriating the same to his own use, and for which he did not account until the fraud was discovered by plaintiff, and he was charged with the same."

The matters and things here alleged, I think, are set out with sufficient particularity to apprise the defendant of what he is called upon to answer, and therefore comply with the rule enunciated in defendant's citation, 9 Enc. Pl. & Prac. 687. See, also, St. Louis v. Knapp Co., 104 U. S. 658. The demurrer to said allegations is overruled.

Defendant also demurs, on the ground of uncertainty, to the following allegation of the bill:

"That as such agent said Adams has assumed and arrogated to himself the entire management of said co-partnership property and the improvements thereon, and has excluded the plaintiff herein from any voice in said management and conduct of said business, or in the making of the improvements thereon, and has shown himself in every way inimical to the plaintiff and his interests."

The demurrer to this allegation is overruled.

Defendant also demurs to that part of the bill which alleges that by virtue of the agreements set forth in the bill complainant has a lien upon the property, etc., on the ground that said allegation is a conclusion of law. Said agreements are not free from ambiguity, and when such is the case "the particular interpretation of the parties is entitled to great, if not controlling, influence." Chicago v. Sheldon, 9 Wall. 50. See, also, 1 Daniell, Ch. Prac. (6th Ed.) 372. Under the circumstances of this case, no rule of pleading, I think, is violated by setting forth the agreements in full, and the construction placed upon them by the complainant. The demurrer to that part of the bill here in question will be overruled.

Defendant also demurs to the whole bill on the ground that it states no case for equitable relief. Under this demurrer defendant claims that the bill is brought to obtain a decree dissolving the partnership between complainant and defendant on account of alleged misconduct of the latter, and that, unless the allegations of the bill as to such misconduct authorize a decree, there is no cause for the appointment of a receiver, or any other relief of an equitable nature. This view of the bill, it seems to me, is correct, and therefore the suit cannot be maintained on the ground, suggested in complainant's brief, that the partnership, under section 2451 of the Civil Code of California, is subject to dissolution at the will of the complainant. If the suit had been brought upon that theory, it would only have been necessary for the complainant to have alleged that he had, prior to the filing of the bill, dissolved the partnership, and the grounds for an accounting and appointment of a receiver, or such other equitable relief as might be proper. The bill, however, I repeat, is not drawn on that theory,

but upon the theory that the partnership is still existing, and that complainant seeks its dissolution because of misconduct on the part of the defendant. The material inquiry, then, is as to whether or not the bill does allege such misconduct on the part of the defendant as, if proven at the final hearing, would justify the court in decreeing a dissolution of the partnership. Assuming, without, however, deciding, that the fraudulent acts alleged against Adams do not constitute a cause for dissolution of the partnership, because it is not shown by the bill that said acts occurred subsequent to the commencement of the partnership, yet there are, in my opinion, other allegations of the bill which do constitute ground for dissolution, namely, those which charge complainant's exclusion from all participation in the conduct of the partnership affairs. Smith, Rec. § 201; 2 Bates, Partn, §§ 591–594; 1 Lindl. Partn. p. 227. These allegations, which, on demurrer, must be taken as true, are as follows:

"That, as such agent, Adams has assumed and arrogated to himself the entire management of said co-partnership property, and the improvements thereon, and has excluded the plaintiff herein from any voice in said management and conduct of said business, or in the making of improvements thereon, and has shown himself in every way inimical to the plaintiff and his interests. That said F. F. Adams has refused to listen to the advice or suggestions of this plaintiff as a co-partner concerning said business, or to consult with him in regard to such management, or the making of improvements upon the ranch, and has incurred and is still incurring large expenses unnecessarily in the management of said ranch, and is now constructing thereon a large packing house at a cost of more than one thousand dollars, at the expense of this plaintiff, and is threatening to make other improvements thereon aggregating a cost of $10,000 to $12,000, all of which plaintiff believes to be entirely unnecessary and unadvisable, and against the incurring of which he has protested and objected. That, notwithstanding said protest, the said Adams has informed plaintiff that he will manage the partnership affairs to suit himself, without any interference from this plaintiff, and will construct said packing house and make all other improvements upon said premises that he deems proper or requisite, at plaintiff's expense, without any regard to plaintiff's wishes in the premises, and that he should not submit to any interference upon the part of this plaintiff."

· The rule of law as to the powers of the members of a partnership in the conduct of its business has been correctly stated thus:

"In the absence of an express agreement to the contrary, the powers of the members of an ordinary partnership are in all respects equal, even although their shares may be unequal; and there is no right on the part of one or more to exclude another from an equal management in the concern. * * * Indeed, speaking generally, it may be said that nothing is considered as so loudly calling for the interference of the court between partners as the improper exclusion of one of them by the others from taking part in the management of the partnership business. It need, however, hardly be observed that it is perfectly competent for partners to agree that the management of the partnership affairs shall be confided to one or more of their number exclusively of the others; and that, where such an agreement is entered into, it is not competent for those who have agreed to take no part in the management to transact the partnership business without the consent of all the other partners." 2 Lindl. Partn. 540.

From this citation it appears that one partner cannot have an exclusive right to manage the affairs of the partnership unless such exclusive right be expressly granted by the partnership agreement, and, furthermore, that in the absence of such an express agreement

it is gross misconduct for one partner to exclude the other from taking part in the management of the partnership business.    When it is considered, in the case at bar, that complainant has advanced all the money which has been used for the improvement of the ranch,—more than $64,000,—a more pronounced disregard of his rights could hardly be conceived than that set forth in the above allegations, unless it be true, as claimed by the defendant, that the contract between complainant and defendant gives to the latter exclusive management of the partnership business.    The clause of the contract bearing upon this question is as follows:

"It is agreed by and between the said parties that the said first party shall advance the necessary capital and money for the purpose of improving the said ranch, planting olive, orange, and other trees, and developing water thereof, and making other betterments upon the same; and that said ranch shall be so improved, the present cost of such improvement being defrayed by the said first party; that the said party of the second part shall devote so much of his time and attention as may be reasonably necessary and proper in the oversight and supervision of such improvements and the making of the same, and the general development of the said ranch, as the betterment thereof shall proceed by the expenditure of the capital of the first party as aforesaid; that the said party of the first part shall charge no interest for the money and capital invested by him in the improvement of said ranch, but the interest on the capital so employed shall be considered as offset and compensated for by the time and attention to be given to the supervision of the work of such improvements by the said second party as above stipulated."

By this clause I think that the defendant is charged with the duty of supervising and overseeing the making of the improvements, but I fail to discern therein anything  which makes defendant's supervision and oversight exclusive, or which denies to complainant a voice in the management of the ranch, or in determining what improvements are to be placed thereon; and the fact—assuming, as must be done on demurrer, the truth of the allegation—that the defendant, through his agent, Adams, has asserted exclusive control of the ranch and the improvements to be made thereon, which, under the peculiar terms of the contract, involves the power to spend complainant's money, without any sort of interference on his part, constitutes such misconduct as authorizes a dissolution of the partnership.    Defendant, however, insists that the acts of Adams excluding the complainant from any voice in the management of the ranch are not shown to have been done with the authorization of defendant.    The bill, however, does, I think, show that this conduct of Adams was authorized by the defendant, the allegation being as follows:

"That as such agent said Adams has assumed and arrogated to himself the entire management of said co-partnership property, and the improvements thereon, and has excluded the plaintiff herein from any voice in said management and conduct of said business," etc.

These things, it will be observed, were done by Adams "as such agent"; that is, by virtue of his agency.    Besides, the rule of law is well settled that "a principal is bound by the acts, omissions, or frauds of his agent while acting in the scope of his employment, though he may have disobeyed instructions received." Stockton Combined Harvester & Agricultural Works v. Glens Falls Ins. Co.,

98 Cal. 557, 575, 33 Pac. 633.    All matters relating to improvements upon the ranch were within the scope of Adams' employment; indeed, he was employed by defendant for the express purpose of supervising these improvements.

Defendant contends that Adams is the agent of the partnership, for whose conduct both the members are equally responsible, and not merely the agent of the defendant, for whose acts the defendant alone is responsible, citing Munroe v. Judson (Sup.) 31 N. Y. Supp. 299, the syllabus of which is as follows:

"A partnership was composed of three married women.  Each gave a power of attorney to her husband to transact business for her.  The conduct of the business was then divided between the three husbands.  Held, that the husbands were agents of the partnership, and not of the individual partners, and that the defalcations of one husband were chargeable as losses of the firm, and were not chargeable solely against his wife's share."

That case is widely different from the case at bar.    The grounds of the decision there are stated in the body of the opinion thus:

"Upon the evidence and upon the facts found by the referee, we think he was warranted in reaching the conclusion that 'the several husbands were each agents of the partnership collectively, and not of the individual partners,' in the transaction of the business of the co-partnership.    Under the evidence we think a finding would not have been warranted by the referee that each wife, in consenting to the firm's employing her husband as agent for the firm, guarantied or undertook individually, to and with such firm, that the acts and doings of such agents for the firm should be performed with fidelity and honesty.    On the contrary, the assumption seems to have been, in behalf of the firm, that the agents so employed should transact the business of the firm as employés of the firm, without any undertaking or security being given to the firm for the faithful discharge of the duties arising from such agency."

In the present case the defendant expressly contracted with complainant to supervise and oversee, either personally or by an agent, the making of such improvements as were to be placed upon the ranch.  Having elected to perform this duty through an agent, and having employed Adams for that purpose, certainly the defendant cannot escape responsibility for Adams' acts, within the scope of his employment.    While, for some purposes, Adams is the agent of the partnership,—as, for instance, in its dealings with strangers,—yet, so far as concerns defendant's express contractual duties to complainant, Adams must be considered the representative of the defendant.

The demurrer to the whole bill is overruled.

### Application for Receiver.

The remaining question to be determined is on the application of the complainant for the appointment of a receiver.    The bill, as I have already shown, alleges such misconduct on the part of the defendant, namely, his refusal to allow complainant any voice in the management of the ranch, or the making of improvements thereon, as, if proven at the final hearing, will entitle complainant to a dissolution.    The exclusion of one partner from his full share of participation in the business of the partnership is also a prominent ground for the appointment of a receiver.    Wolbert v. Harris, 7 N. J. Eq. 621; Const v. Harris, Turn. & R. 517; s. c. 24 Rev. Reports, 108; 20 Am.

& Eng. Enc. Law (1st Ed.) 298; Whitman v. Robinson, 21 Md. 43; High, Rec. §§ 472, 483, 484, 509, 522. In Const v. Harris, supra, the court say:

"So, again, with respect to making Mr. Robinson the treasurer, Mr. Const had a right to be consulted. His opinion might be overruled, and honestly overruled, but he ought to have had the question put to him and discussed. In all partnerships, whether it is expressed in the deed or not, the partners are bound to be true and faithful to each other. They are to act upon the joint opinion of all, and the discretion and judgment of any one cannot be excluded. What weight is to be given to it is another question. The most prominent point on which the court acts in appointing a receiver of a partnership concern is the circumstance of one partner having taken upon himself the power to exclude another partner from as full a share in the management of the partnership as he who assumes that power himself enjoys."

Affidavits have been filed by the defendant, and also by Adams, his agent, denying, in general terms, the exclusion complained of. There are, however, certain matters of evidence set forth in the affidavit of the complainant filed in support of his application for a receiver, tending to establish said allegations, which have neither been denied nor explained by any of the affidavits offered on behalf of the defendant. These matters of evidence consist of correspondence, telegraphic and by mail, between complainant and defendant, during the month of November, 1897. About the 4th of said month complainant received from Adams a letter, dated November 1, 1897, in which, among other things, occurs the following:

"I expected to hear from you or Mr. Frank, not later than Saturday last, regarding a couple of propositions I submitted to him before he left here; but, not having heard from either of you, presume you do not care to entertain either of them. I leave for San Diego this p. m. to have plans and specifications drawn up for a packing house, and will let the contract before I leave there. I am in hopes to be able to start in on the building not later than the 15th inst., and sooner, if possible. The cost of the structure will be in the neighborhood of $1,000.00; possibly a little more, as lumber has advanced in price recently. Before the irrigating season commences again, the water system will have to be enlarged and extended. As soon as the weather will permit in the spring, a lemon-curing house will have to be constructed. Out barn and tool shed are also inadequate, and will have to be enlarged to meet demands. Should we have a large crop of olives the coming season, provision must be made to handle them. An olive mill will have to be constructed for extracting the oil, and better conveniences for pickling them. The mess house will necessarily have to be enlarged, as we will need more room to accommodate the pickers, who cannot camp out at this season of the year. Other improvements of lesser note will necessarily have to be made, such as the painting of houses, barn, shed, etc., etc. I think it best to notify you of these contemplated improvements so that you can shape yourself to meet the outlay, which will probably amount to something like $10,000.00 or $12,000.00. I'll not be able to return to the ranch before Saturday morning, as it will take a couple of days to perfect the plans, and a couple more in which to invite bids and close contract.

"Yours, truly,                         F. F. Adams."

To that letter the complainant replied by telegram as follows:

"San Francisco, Nov. 4, 1897.

"To F. F. Adams, c/o A. L. Ross, 1406 D St., San Diego: I hereby notify you not to let any contract for building packing house upon my ranch, as I will not be responsible for the same, and do not want said house constructed.                         J. Einstein."

In reply thereto, on the same day, complainant received from Adams the following telegram:

"San Diego, Cala., Nov. 4, 1897.

"To J. Einstein, 149 Bluxome St., S. F.: Plans and specifications completed. Contract will be let to-morrow.                     F. F. Adams."

Afterwards, on the 26th of the same month, complainant wrote the following letter to Adams:

"San Francisco, Nov. 26th, 1897.

"Mr. F. F. Adams, Red Mountain Ranch, Cal.—Dear Sir: I have to-day sent to the tax collector of San Diego Co. the sum of $106.58 in payment of the taxes now due on the Red Mountain ranch and property. This includes both the amount due from Mr. Schnebly and myself, and I shall deduct Mr. Schnebly's proportion, amounting to $53.29, from my remittance to cover statement from November. You will also please take notice that, should you remain in the occupancy of the dwelling house on said ranch, I shall expect you to pay rent therefor at the rate of $25.00 per month. Also that I shall not hereafter pay any of the expenses of your family, nor your household, your servants, nor your personal expenses. Nor shall I allow Mr. Schnebly any credit for same. I also wish you to immediately discharge the gardener and all other men employed upon the place whose services are not actually necessary for the care of the property, and I shall not hereafter pay any portion of the wages of said gardener or all such surplus men. You are also directed not to make any further improvements of any kind on said ranch, and until further notice I shall pay no portion of the expenses of the same, nor allow Mr. Schnebly any credit for any expenses incurred upon the ranch, except that are actually necessary for gathering the crop now growing thereon, and for seeding part of said ranch and rented property in grain as may be necessary, and to keep the property from being destroyed or lost.

"Yours, truly, ·                                         J. Einstein."

To this letter Adams responded as follows:

"Red Mountain Ranch, Dec. 3rd, 1897.

"J. Einstein, Esq., San Francisco—Dear Sir: Yours of the 27th ult. received a couple or three days ago, but have been too busy to reply before. You certainly have made a great discovery at this late date, when you assume that I am not entitled to live in the dwelling house, and have the expenses of my family paid. You know very well you have agreed that I should live in the house, and the expenses of living here should be paid by you, to be charged up to the ranch, and afterwards repaid according to the contract out of the profits of the ranch. You had better tell your lawyers all the facts in the case. If they have made this discovery, it certainly is most wonderful. I presume they made the discovery, also, that you could bring suit in the U. S. court; but, if I am not very much mistaken, your lawyers will find out that they were wrong in that as well as in advising you that I am not entitled to live in this house. Mr. Schnebly desires that the improvements should be kept up as they are. There will be no surplus men on the ranch, as there never has been. The gardener will be retained, as he answers the purpose of a twenty-dollar man. I presume, when you say that you will not allow Schnebly credit for any expenses incurred upon the ranch except that are absolutely necessary for gathering the crop now growing thereon, and for seeding part of said ranch and rented property in grain, as may be necessary, and to keep the property from being destroyed or lost, you do not mean to violate your contract. You know the property had to be cared for, as well as the crops have to be harvested. I never had a man that wasn't necessary on the ranch, and you can't point a single instance when I have employed a man who was not properly employed, and his employment approved by you. Your conduct in this matter of recent date has been caused, I have little doubt, because I would not put up with the insolence and indecency of Mr. E. M. Frank, who had no busi-

ness upon the ranch. Now, if you will take a friend's advice, you will stop your d——d nonsense, and help carry on this ranch to a successful issue, either by sale or to a profit-rendering period. I will continue to run the ranch as heretofore, and will render you monthly statements. I will not pay any rent for the house, and the household expenses will go on as before. Packing house completed.

"Yours, truly, F. F. Adams."

This correspondence, to my mind, indicates a purpose, then entertained by Adams, to conduct the ranch in accordance with his own wishes, without due regard for, or deference to, those of the complainant. It will be observed that the last letter follows certain propositions, which Adams had made to the complainant, looking to a division of the ranch, or its sale to complainant, which propositions were not favorably entertained. It will be further observed that said letter simply advises the complainant, in somewhat peremptory terms, that the packing house will be built immediately, and that the other improvements mentioned will be made at the times indicated, and that the latter, so far from asking the views of the complainant in regard to the propriety of the contemplated improvements, expressly states that Adams communicates his purposes to the complainant in order that the latter might provide himself with funds to pay for the improvements which Adams had decided should be made; the language of this clause of the letter being as follows:

"I think it best to notify you of these contemplated improvements, so that you can shape yourself to meet the outlay, which will probably amount to something like $10,000.00 or $12,000.00."

Not only does Adams build the packing house against complainant's earnest remonstrances, but nearly a month after he had notified complainant of his intention to build said house he further says, in his letter of December 3, 1897:

"I will continue to run the ranch as heretofore, and will render you monthly statements. I will not pay any rent for the house, and the household expenses will go on as before. Packing house completed."

In addition to these letters, it is shown by the affidavit of E. M. Frank that in October, 1897, when Frank, as complainant's agent, protested against the construction of the packing house, telling Adams that both the complainant and himself were of the opinion that such building was unnecessary at that time, Adams stated in reply: "You can tell Mr. Einstein that I will run this place to suit myself, and without interference on his part." Adams, in his counter affidavit, does not deny this statement of Frank, but simply says that he does not believe that he used the language attributed to him, and that he believes that he told Frank that he would build the packing house notwithstanding his opposition, and without the interference of complainant. As I have already ruled, in passing upon the demurrer, the defendant must be held responsible for these acts of Adams, since Adams was appointed by him his agent to supervise and oversee the very matters to which said acts related. Furthermore, the affidavit of Adams shows that defendant expressly instructed Adams to pursue the course he did pursue in reference to the packing house, and impliedly directed him to ignore any objections which complainant

might make to other contemplated improvements.     In a letter dated
at Ellensburg, Wash., September 18, 1897, and which Adams at-
taches as an exhibit to his affidavit, the defendant instructs Adams
as follows:

"Now, as for a packing house, of course you are the best judge as to the
needs of the ranch, and from what you have written me heretofore I
think you need it badly.   Go ahead, and build it immediately.   If the plans
you submitted a year ago are inadequate for your present wants, I think
you had better enlarge it. ' Put up a building that will meet your wants for
some years to come.   Whatever you do, do not put up a makeshift, but a
good, substantial building.   Any buildings or other improvements necessary
to carry on the business to an advantage, go on and have done.   Einstein
offering any objections to making further improvements cuts no figure with
me.   All I ask of him is to live up to the letter of the contract, which I shall
see that he does."

This letter not only authorizes the building of the packing house
over Einstein's objections, but evinces a general disposition, like that
shown in the letters of Adams, to make improvements upon the ranch
according to the views and wishes of Adams and himself, regardless
of those of complainant.     Again, defendant, in his affidavit filed in
this suit more than two months after its commencement, says, among
other things:

"Affiant further says he approved of the building of the packing house
mentioned in the bill of complaint, and directed the said Adams to build the
same, and wholly approved of the management of said ranch by said
Adams."

Defendant, in his brief filed in this cause May 10, 1898, reasserts
his right of exclusive control, under the agreement between complain-
ant and himself, in the following language:

"But this agreement gives defendant, by his agent, the management of the
ranch to the exclusion of plaintiff."

I am satisfied that the agreement between the complainant and
defendant does not give to the latter exclusive management of the
ranch, and that the affidavits submitted on this hearing, as to the
assertion and exercise of that power by the defendant, require the ap-
pointment of a receiver.     If the parties can agree upon a suitable per-
son for the office, I will appoint him; otherwise I will myself make
the selection.