HARRISON et al. v. THOMAS.

(Circuit Court of Appeals, Fifth Circuit. November 27, 1901.)

No. 1,009

1. CORPORATIONS—LIABILITY OF DIRECTORS—FRAUDULENT DIVERSION OF FUNDS.
    It is only where the directors of a corporation act in good faith that the courts will not interfere with their discretion in fixing the salaries of officers, or that there is any presumption in favor of the validity of their action; and where, in a suit by stockholders, the court found, upon evidence which justified such finding, that the directors, in voting salaries to two of their number as president and vice president, acted in.

bad faith, and in pursuance of a fraudulent scheme to divert the funds of the corporation, the burden rested on the directors to show that such officers in fact rendered services to the corporation, and their value, and, in the absence of such proof, the court was justified in rendering judgment against them for the full amount so paid out.

2. SAME—STOCKHOLDERS' SUIT—DEMAND AS CONDITION PRECEDENT.
A stockholder, in a bill filed on behalf of himself and the other stockholders against the directors of the corporation and a bank, alleged that two of the directors were officers of the bank, and the other two debtors of the bank and insolvent, having been qualified as directors by the transfer to them of one share of stock each by their fellow directors, who, on behalf of the bank, held a majority of the stock of the corporation; that, in pursuance of a fraudulent scheme to abuse their trust, the directors voted large salaries to the insolvent members, as president and vice president, for which no services were rendered, such salaries being paid to the bank, and applied upon the indebtedness of such members. *Held*, that on such alleged state of facts complainant was not required, by equity rule 94, to make demand on the directors to correct such abuse before bringing suit.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

S. B. Cantey, W. P. McLean, and D. W. Humphreys, for appellant.
L. A. Smith and Drew Pruit, for appellees.

Before PARDEE and SHELBY, Circuit Judges, and BOARMAN, District Judge.

BOARMAN, District Judge. A. D. Thomas, a citizen of Arkansas, claiming to be the owner of one-sixth of the capital stock of the Standard Light & Power Company, a plant then being operated in the city of Ft. Worth, Tex., for the manufacture of electric light and power, the capital stock of said company amounting to $60,000, it being all paid up, instituted this suit in the circuit court of the United States for the Northern district of Texas, in behalf of himself and all the stockholders of said manufacturing company, against the directors and officers of said company, to wit, John C. Harrison, W. B. Harrison, G. E. White, and R. I. White, and the said Standard Light & Power Company, and the State National Bank of Ft. Worth, all citizens of Texas. There were other defendants named in the bill, but they do not appear to be necessary parties as to the matters we are now considering. One purpose of the complainant's suit was to take the Standard Light & Power Company out of the hands of its said officers and directors, and have a receiver appointed to take charge of the property and interests of said company. That purpose was accomplished, and is not now a matter at issue on this hearing. The immediate relief sought by the complainant was to recover for himself and the other stockholders against the defendants named the sum of $10,000, which sum the complainants allege was misappropriated by wrongful and fraudulent mismanagement of the property and funds of the said Light & Power Company by the said above-named directors. The complainant, seeking the relief just mentioned, alleges that the said directors, while administering the trust funds of the defendant corporation, did, in their official capacity, cause said sum to be illegally diverted from the funds of

the defendant corporation, the Light & Power Company, to the payment of certain obligations which it is alleged the said G. E. and R. I. White, then insolvent, and against whom such said obligations were wholly worthless, owed the said defendant bank, and for which said debt of the said Whites the defendants named, with knowledge both of said directors and the said national bank, was in no way legally liable to the bank. Complainant further alleges that the said bank, through the agency of the said defendants J. C. and W. B. Harrison, one cashier and the other vice president of said bank, with knowledge on its part of the fraudulent scheme set out in complainant's bill to fraudulently divert the said trust funds, did appropriate to its own use such said sums as were, in accordance with the resolutions of the said directors of said defendant corporation, fraudulently paid under the guise of salaries to the defendants G. E. and R. I. White, so that the said sums so paid from time to time should be and were appropriated to and in payment of the debt owed by the said Whites to the said bank, as above stated. Appellees contend that the said J. C. and W. B. Harrison owned five-sixths of the capital stock of said corporation, with the exception of two shares, which were held, respectively, by G. E. and R. I. White. That the two said shares of stock were respectively held by the said Whites at the instance of the said Harrisons, and in furtherance of the conspiracy charged in complainant's bill, so that the two Whites, owning the two shares of stock, might become directors, and thereafter be used, as they were used, as "dummies" of the said Harrisons, to carry out the fraudulent scheme set out in the bill, by which they could and did enable the said bank knowingly to become wrongfully, and without legal consideration, the beneficiary of the said corporation's funds, amounting to $10,000. For the purpose of stating and illustrating more fully the material matters of fact at issue, we quote as follows from complainant's bill:

"Some time about September, 1896, the defendant bank, holding 500 shares of the Standard Light and Power Company's stock, as collateral security as aforesaid, had said stock sold, and the same was bought in by defendant bank in the name of the defendants. John C. and W. B. Harrison, as your orator is informed and alleges. That it was bought in, as your orator is informed, at a comparatively small price, which was credited upon said indebtedness (meaning the debt of Stratton-White Company and G. E. and R. I. White), and that said stock was held by John C. and W. B. Harrison in trust for defendant bank. And your orator is informed and charges that said stock was held in trust as aforesaid for the defendant bank up until the time of the transfer to Ellis, as hereinbefore stated. That after the sale of said 500 shares of stock, and the purchase thereof by defendant Harrison, as aforesaid, one share of stock each was left in the name of G. E. and R. I. White, respectively, but the ownership, however, was vested in Harrison, in the manner aforesaid. That some time in the fall of 1896, owing to the failure of the directors of the Standard Light & Power Company to pay its franchise tax, the charter of said corporation was forfeited, and on the 6th day of November, 1896, the said George E. and R. I. White, John C. and W. B. Harrison, obtained a new charter for said corporation, which articles of incorporation were filed with the secretary of state on the 6th day of November, 1896. That in said articles of incorporation it was prescribed that there should be only four directors, and G. E. and R. I. White and John C. and W. B. Harrison were named as directors for the

first year. The new charter was in fact a reincorporation of the old Standard Light & Power Company, the new corporation taking charge of all the assets of the old corporation, and assuming all of its obligations. That on the 9th day of November, 1896, there was a meeting of the stockholders of the said new corporation, at which the defendants George E. and R. I. White, John C. and W. B. Harrison, were each elected as directors for the ensuing year thereafter. That there has been no other election of directors for said corporation until the pretended election hereinafter alleged, on the 28th day of June, 1898. That on or about the 17th day of November, 1896, the Thomas Manufacturing Company caused the shares held by it as collateral security to be sold, at which sale the same were bought in by complainant, A. D. Thomas, and the certificate of stock hereinbefore described was issued to him. Having been frustrated in their attempt. hereinbefore stated, to appropriate the property of the Standard Light & Power Company to the payment of the indebtedness of the Stratton-White Company and of G. E. and R. I. White to the defendant bank, the said defendant bank, and said John C. Harrison and W. B. Harrison and G. E. and R. I. White, the last four being directors of the Light & Power Company, on or about the last of November, 1896, adopted another scheme, and combined together to defraud said corporation, and to appropriate its said property to the use of said bank, to the payment of the aforesaid indebtedness. The last-named scheme was to appropriate $500.00 of the proceeds of the Standard Light & Power Company each month to the payment of said indebtedness; and, in pursuance of this fraudulent scheme, the said directors caused to be paid to the defendant bank, on each and every month, beginning with, to wit, November, 1896, and continuing and including June, 1898, the sum of $500.00 in cash, except the month of April, 1898, on which no payment was made. That the Standard Light & Power Company received no compensation whatever for said sums of money, except as herein stated, and that the said misappropriation of same was but a continuation of the fraudulent design and conspiracy of the said parties to appropriate the proceeds of said corporation to the use and benefit of said defendant bank. That this $500.00 per month was paid under the guise of salaries, as follows: $250.00 per month to G. E. White as president, $175.00 to R. I. White as vice president, and $75.00 to John C. Harrison as secretary and treasurer. Your orator charges that as a matter of fact it was never contemplated that the said G. E. and R. I. White should receive any of the said money, but that the same should be, and in fact was, paid directly to the defendant bank, and credited upon the aforesaid indebtedness owing by the said Stratton-White Co. and the said Whites to the defendant bank, and that the payment of said sums, as salaries, was a subterfuge and dodge resorted to by said parties to carry out their fraudulent purpose aforesaid. That the sum of $250.00 per month is an unreasonable sum to be paid to any person for acting as president of said corporation during any of said time, and the sum of $175.00 per month is an unreasonable sum to be paid for acting as vice president, and that the sum of $75.00 per month is an unreasonable sum to be paid for a secretary and treasurer, all of which complainant charges that said directors well knew. That as a matter of fact the affairs of the said corporation were managed during all of said time by defendant T. R. McMahan, who received ample compensation therefor from the corporation, aside from the said $500.00 paid as aforesaid. That the defendants G. E. and R. I. White, at the time those large sums of money were ostensibly paid to them as salaries, owned no interest whatever in the corporation, having only one share each in their names, which was, however, owned by the Harrisons and the bank, but, on the contrary, owed the corporation several thousand dollars, as shown by the corporation's books. That the defendants White devoted none of their time, as your orator is informed and believes, and therefore alleges, to the affairs of said corporation, for which reason their services were of no value whatever to said corporation. That the services of the defendant John C. Harrison would not have been worth more than $25.00 per month, even if he had conducted its affairs in good faith and for its best interest. That the defendant bank during all of said time was represented by said John C. Harrison, as its

cashier and manager, and W. B. Harrison, as its vice president, by reason of which fact defendant bank had notice and knowledge of all the facts herein alleged, and the unreasonableness of said sums of money herein alleged to have been paid as salaries. That the indebtedness owing to said bank was practically worthless, all of the obligors thereon being insolvent. That said money was reasonably worth to the defendant the Standard Light & Power Company, during all of said time, and upon the markets of Ft. Worth, ten per cent. per annum; therefore your orator prays for decrees against each of said last-named defendants John C. and W. B. Harrison, G. E. and R. I. White, and the defendant bank, and especially against the defendant bank and John C. Harrison, for the sums of money paid aforesaid to said bank, with interest thereon at ten per cent. per annum from the date of such payments, and that they may be required to return said money, with interest as aforesaid, to the said Standard Light & Power Company."

The trial court in the final decree said:

"The court is also of the opinion that John C. Harrison, W. B. Harrison, G. E. White, and R. I. White, the former directors of the Standard Light & Power Company of Fort Worth, Texas, conspired together to misappropriate and deliver to the State National Bank of Fort Worth, Texas, all the moneys of said Standard Light & Power Company paid by the said directors to the said G. E. and R. I. White under guise of salaries, and which was without consideration, from the first part of November, 1896, the day on which plaintiff became a stockholder in said Standard Light and Power Company, up to, to wit, the first day of July, 1898, and that said moneys so paid to said bank was a trust fund of said Standard Light and Power Company, and that said bank accepted the same with a knowledge of said trust, and without consideration, and therefore said four directors and said bank are liable to plaintiff for said money so misappropriated, and interest thereon at the rate of six per cent. per annum from the date of each payment made to said G. E. and R. I. White, and to said bank as aforesaid, to the present time, aggregating the sum of $8,998.85. The court, therefore, orders and decrees that complainant, A. D. Thomas, a stockholder in said Standard Light and Power Company, do have and recover (for the benefit of the defendant the Standard Light and Power Company of Fort Worth, Texas, and the creditors and stockholders that may be interested therein), of and from the defendants John C. Harrison, W. B. Harrison, G. E. White, R. I. White, and the State National Bank of Fort Worth, Texas, the sum of ($8,998.85) eight thousand nine hundred ninety-eight and eighty-five one-hundredth dollars, together with interest thereon at the rate of six per cent. per annum and all costs of suit, for which sums and costs in this cause it is ordered that complainant do have execution in conformity with the law and the practice prescribed by the rules of equity."

It appears that the salary $75 per month paid to John C. Harrison was not included in the sum for which the trial court gave judgment against the two Harrisons, the two Whites, and the State National Bank. The matter submitted at this hearing, so far as it is disclosed in the contention and arguments by counsel on either side, relates only to the right of the appellees to recover from John C. and W. B. Harrison, G. E. and R. I. White, and the State National Bank the sums of money which were paid out of the trust fund, at the instance and under the direction of the directors of the defendant company, to said employés, to wit, $250 per month paid to R. I. White, $175 a month paid to G. E. White, and $75 a month paid to John C. Harrison.

The evidence shows, without contradiction, that T. R. McMahan was the general manager of the business of the Standard Light & Power Company during the time the salaries complained of were

being paid to the Whites and John C. Harrison; that he attended to everything; that he always hired the men; that he received and disbursed the moneys of the company during the time mentioned; that he kept the records and books, and, in general, managed the business of the company. It shows, too, that commencing with January, 1897, all the checks monthly for the salaries to the Whites and John C. Harrison were turned over and made payable to John C. Harrison, cashier of the State National Bank; that these were drawn monthly by the Manager McMahan, who was verbally authorized by the Whites and John C. Harrison to draw the monthly checks in favor of the cashier of the State National Bank; that prior to January 1, 1897, the salaries were $350 per month; that the directors named told McMahan verbally the salaries had been raised, and that thereafter he should pay $500 per month. There is nothing in the minutes of the board of directors to show that this raise in the salaries was ever made. McMahan says this amount monthly was supposed to be paid as salaries to G. E. White as president, R. I. White as vice president, and John C. Harrison as secretary and treasurer, and he says the board of directors authorized him to pay the salaries. The evidence further shows that these payments were entered upon the books as charges to labor account up to January, 1898; that afterwards the payments were entered on the books as labor accounts, but there was an account kept showing the salaries were credited to G. E. and R. I. White and John C. Harrison; that always prior to January, 1898, the salaries were charged up to labor account, instead of going to the individual accounts of the Whites and Harrison.

It is contended that the salaries paid to the Whites, even though they may appear to be "disproportioned to the value of the services rendered," were paid to them in good faith, for services which in some degree they did render as employés of the defendant corporation; that such sums, having been paid as salaries to them in good faith, ceased to be trust funds, and the Whites had a right to turn over, if they chose to do so, monthly, the sums as were paid to them as salaries in the discharge of their old debt to the bank. It is urged in the argument by appellants' counsel that the evidence shows the Whites did render some valuable services as employés of the defendant corporation, and that, in the absence of any testimony showing how much of the salaries paid to them was actually earned, the trial court should not have concluded that the services of the Whites were "without consideration."

The contentions we have stated above present the merits of the defense relied on by all the defendants, and make it necessary to consider only the assignments of error which challenge the conclusions of the trial judge on the law and facts which were adverse to appellants. The several assignments stated in appellants' brief may be substantially stated under the two following propositions:

(1) The directors have the power to fix the salaries of the officers, and in so doing they have the right to exercise their own discretion. If they act in good faith, and receive no pecuniary advantage from the salaries paid, and do not conspire with the offi-

cers receiving such salary to defraud the company, they cannot be held liable for such payments. That, in the absence of any evidence showing what would be reasonable compensation to the officers of a corporation for certain services performed, the court cannot arbitrarily determine that such compensation was so unreasonable as to constitute evidence of a conspiracy to defraud the corporation.

(2) The complainant, A. D. Thomas, was a stockholder, and as such was first required to make an effort to correct the payment of unreasonable salaries by appealing to the board of directors. Not having made any effort to correct this payment of salaries through the board of directors, he has no right either to sue or recover therefor; and the corporation being solvent and a going concern at the time the salaries were voted by the directors and paid as such, and no complaint having been made thereof, he could not be heard, after a lapse of two years, to complain for the first time by the filing of a suit to recover same.

The first proposition, as to the power of the directors to fix the salaries of such officers of the company whose funds they were administering as were in good faith employed to render services to said company, may be considered to be true. But it was clearly jurisdictional in the court below to apply such facts as were found in the state of case, with a view of determining the good faith of the directors in employing such officers, and in determining whether or not the allowances to them by the directors in such sums as they did allow to the persons named was or not made in pursuance of the fraudulent scheme set out in the bill to divert the trust funds under their administration, so that the State National Bank would become illegally and wrongfully the beneficiary of said funds. If such salaries as are complained of in this case were allowed in good faith by the directors administering the funds of said corporation to the employés named, even though such salaries may appear to be unreasonable when measured by the amount of service rendered in the earning of them, the court would not, because the salaries were "disproportioned to services rendered," be authorized to determine that such compensation of itself constituted conclusive evidence of a conspiracy to defraud the corporation. It does not appear that the trial court rested its conclusions, as to a conspiracy having been entered into by the said directors to defraud the company by misappropriation of the funds in payment of salaries to the Whites, upon the thought or because of the fact that the salaries were unreasonable or "disproportioned to the service rendered." The trial court seems rather to have reached a conclusion adversely to the defendants, because the evidence showed that the Whites were employed in bad faith, and were not expected by the directors, including themselves, to render any service of value at all to the defendant company, but were paid salaries out of the trust funds under their administration solely for the illegal purpose of enabling the money paid under the guise of salaries to such employés to be paid to or reach the bank in settlement of the worthless debt of the Whites to the bank. This conclusion, we think, may have been reached without considering the unreasonable-

ness of the salaries. The first part of the proposition we are considering is of no force if the Whites were employed in bad faith. The proposition itself, if the directors acted in bad faith, carries with it an admission of its want of force. Whether the salaries were reasonable or unreasonable, the trial court seems to have been of the opinion that the trust was abused by the directors named, and that such abuse was practiced with the full knowledge upon the part of the bank, which, in pursuance of their fraudulent illegal acts, was to be the beneficiary of the funds misappropriated. It may be that in fact the Whites rendered some service of value to the defendant company, and that the salaries were not, as the court below said in its decree, paid "without consideration," but if any sum, notwithstanding the conspiracy to abuse the trust, should have been allowed to the Whites, we think the burden was on the defendants to show what they may have actually earned in rendering services to the defendant company. Gardner v. Butler, 30 N. J. Eq. 702.

The second assignment is founded on the contention that, if the payments of the salaries of which he complains were unreasonable and improvidently allowed, the complainant should have complied with the provisions of equity rule No. 94. If there was such a conspiracy as is in this case charged against the directors, there is no merit in the suggestion that Thomas should have made formal application to the board of directors for action to be taken in the name of the corporation to redress the wrongs alleged to have been done complainant and the other stockholders. It was said in a case analogous to the pending case (Phosphate Co. v. Brown, 20 C. C. A. 428, 74 Fed. 323):

"The present is a suit against a corporation administered by a president and board of directors, who are charged with wrecking the corporation for their own private ends. The purpose of the bill is to wreck the corporation. To assimulate that to the case provided in rule 94, and to require the complainants to show that they had exhausted all effort in inducing the directors to convict themselves of fraud, is absurd."

The case of Tazewell Co. v. Farmers' Loan & Trust Co. (C. C.) 12 Fed. 753, is another case analogous to this. In that case the court said:

"It is true the bill does not show any formal application to the board of directors that action be taken in the name of the corporation to redress the wrongs alleged to have been done complainants and other stockholders, but it does show a condition of things touching the control of the corporate affairs by those intrusted with their active management that would have rendered such a formal application an idle ceremony. Under the circumstances detailed in the bill, the existence of which must, on this hearing, be assumed, and in view of the injury which might have resulted from delay in suing, it was not reasonable to require such previous application to be made to the board of directors."

The language we have just quoted applies with controlling force to the material issues developed in this suit. The bank, through the agency of the Harrisons, one its cashier and the other vice president, was the beneficiary, with knowledge, of the sums wrongfully paid to the Whites. No one but the bank got any of the money wrongfully diverted from the trust fund by the two Whites

and Harrisons as directors, under the guise of salaries to the Whites. The salaries paid monthly were included in one check, which was made payable to the bank's cashier, John C. Harrison, by the general manager of the defendant Light & Power Company. This sum was paid by the general manager under the verbal directions of the four directors. These facts, supplemented by other material incidents in the scheme to abuse the trust, show clearly that the bank had full knowledge of the wrongful purposes of the directors in employing the Whites, and having the monthly salaries paid to them turned over to the bank.

The decree of the circuit court is affirmed.