EXCELSIOR PEBBLE PHOSPHATE CO. et al. v. BROWN et al.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1896.)

No. 155.

1. EQUITY PRACTICE—SUITS BY STOCKHOLDERS—EQUITY RULE 94.

Where a suit is brought by stockholders and creditors of a corporation against such corporation, alleging that the officers and directors are seeking, by collusive suits and other unlawful methods, to control the property of the corporation, in their own interest, and to wreck the corporation, and praying for the appointment of a receiver and the intervention of the court to protect the corporation, it is not necessary to show compliance with equity rule 94, by attempting to induce the officers and directors to take action to convict themselves of the fraud charged.

2. CIRCUIT COURTS — JURISDICTION — DIVERSE CITIZENSHIP — RESIDENCE OF PARTIES.

Under the act of March 3, 1887, as amended by that of August 13, 1888, a circuit court has no jurisdiction, upon the ground of diverse citizenship, of a suit brought by residents of other districts than that for which the court sits, against several defendants, only one of whom is a resident of that district.

This case comes up by an appeal from the circuit court of the United States for the district of West Virginia.

The original bill was brought by three stockholders of the Excelsior Pebble Phosphate Company, a corporation of the state of West Virginia, making the corporation the party defendant. The bill states that this corporation was formed for the purpose of purchasing phosphate lands in the state of Florida, and the digging, mining, and quarrying pebble phosphate and phosphate rock, and the treatment and preparation of the same for market, in accordance with the customs and usages of the trade, and the vending and shipment of the same in the raw and treated state, and for the erection of the necessary buildings and houses for the conducting of said business and the shelter of its employés and servants, and the construction of canals and waterways within and upon the lands of the corporation, and also such other works and improvements as may be necessary and proper in carrying on the business contemplated under its organization; that they are stockholders, and that two of them are also creditors of the company; that the corporation had executed to the Central Trust Company of New York a mortgage of certain real estate in the state of Florida, and all of its personal property, consisting of plant and machines, as well as all other personalty upon said lands, together with such as may thereafter be purchased by the company in addition thereto, or to replace any of the same, which mortgage was duly recorded in Florida; that this mortgage was intended to secure 100 bonds, of $1,000 each, with coupons, bonds to be due March 1, 1919; that proceedings to foreclose this mortgage are pending in the circuit court of the United States for the Southern district of Florida, and that a receiver had been appointed therein; but that, though the subpœna had been properly served, no appearance had been entered for the Excelsior Pebble Phosphate Company, although the plaintiff, trustee under the mortgage, intends to proceed to a sale therein; that judgments had been obtained against the defendant company in Florida, and executions issued, under which the lands and personal property have been advertised for sale, the lands being those covered by the mortgage, and with the personalty, include nearly all the property of the defendant company, the executions amounting to about $8,000; that the corporation is insolvent, and that numerous suits are pending against it in the state courts of Florida; that these suits are brought by connections and friends of Kaufman Simon, president of the company, and in his interest, to secure him and them preferences over the property of the company, and that said Simon and a majority of the directors are in collusion in this matter, seeking, by unlawful methods, to control the prop-

erty in their interest; that Simon has misused the mortgage bonds of the company, placed in his hands for special purposes; and that his aim and that of his confederates is to wreck the company, and deprive complainants of their debts. The bill prays the appointment of a receiver; that he be instructed to take such action as will protect the company in the premises; that an injunction issue against the corporation, its servants and agents, preventing them from interfering in any manner with the receiver, and for general relief.

Upon presenting the bill to the court, on 23d November, 1895, leave was given to file it. The motion for the appointment of a receiver was set for a hearing on 26th November next thereafter, and an injunction was issued restraining the defendant corporation, by its president or any other officer or attorney, from confessing judgment in any suit in any federal or state tribunal of any state of the Union. Leave also was granted to the complainants to file any amendments to the bill on or before the hearing fixed. The Excelsior Pebble Phosphate Company excepted to this decree, and it is referred to in the first three assignments of error. On 26th November, the day fixed by the court, the complainants filed amendments of their bill, fortified by affidavits, and again moved for the appointment of a receiver and the issuance of an injunction, as prayed for in the bill and amended bill. These amendments change the character of the bill, by making it in behalf of all creditors and stockholders of the company who may come in, etc. They aver that the suit is not collusive, seeking to confer jurisdiction on the court of a case in which otherwise it would have no cognizance; state that the bill is brought against the Central Trust Company of New York, a corporation duly organized under the law of that state, trustee of the mortgage of the Phosphate Company; charge bad faith in the execution of the mortgage in the attorney of the defendant company, and more bad faith on the part of Simon and the majority of the directors; aver that none of the stock-holders of the defendant company are citizens of West Virginia. They contain no prayer for process, nor any prayer of any kind. The proceedings following the presentation of these amendments, and the motion thereon, are in these words: "And thereupon the defendant the Excelsior Pebble Phosphate Company, by W. E. Chilton, its solicitor, tendered its plea to the jurisdiction of the court, to the filing of which the plaintiff objects, which objection, being considered by the court, is sustained, and said plea is rejected, to which ruling of the court in refusing to allow said plea to be filed, and in rejecting the same, the defendant aforesaid excepts. And thereupon the defendant the Central Trust Company of New York, by Joseph E. Chilton, its attorney, appeared for the sole purpose of objecting to the jurisdiction of this court in this case, and for the purpose of filing its plea to the jurisdiction of the court, and did tender its plea to the jurisdiction of the court, to the filing of which the plaintiff objects. And, the court having considered said objection, the same is sustained, and said plea is reje'·'d, to which ruling of the court in sustaining said objection, and in rejecting said plea, the said defendants object and except. And thereupon the defendants, by their solicitors aforesaid, moved the court to dismiss this suit; but the court overruled said motion, to which ruling of the court in refusing to dismiss this suit the said defendants object and except. And thereupon the defendant the Excelsior Pebble Phosphate Company filed its demurrer to the said bill and amended bill; and said demurrer is set down for argument, and, being argued and considered, the same is overruled. And thereupon the plaintiffs, by their said solicitors, moved the court to appoint a receiver as prayed for in said bill and amended bill, and to grant the injunction prayed for in said bill, which motions were resisted by the defendants, upon the grounds hereinbefore stated in their pleas and motions; but the court granted said motions, and each of them, as set forth in the order and decree hereinafter to be mentioned." The decree appointed a receiver, gave him special instructions, and clothed him with special powers, and added the following order of injunction: "And it is further decreed that an injunction do issue restraining and inhibiting the defendants the Excelsior Pebble Phosphate Company and the Central Trust Company of New York, and their and each of their officers, directors, agents, and servants, and all other persons, from

interfering in any wise with the receiver hereby appointed, in the discharge of his duties and the exercise of his powers and authorities under this appointment, and from doing any act, matter, or thing which the said receiver, by virtue of his appointment and of the instructions of this court, may be authorized to do."

W. E. Chilton, for appellants.

J. F. Sanderson (E. L. Buttrick, on brief), for appellees.

Before SIMONTON, Circuit Judge, and HUGHES and PAUL, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). The case comes here with numerous assignments of error. They present these questions: First, as to the order made 23d November, 1895, by which a temporary injunction was granted, and a time fixed for hearing a motion for the appointment of a receiver; second, to the bill as amended, and the decree of November 26, 1895, upon the ground that the circuit court of the United States for the district of West Virginia could not take jurisdiction of the cause as amended; nor could it appoint a receiver therein.

With regard to the first question: Inasmuch as the complainants in the original bill were citizens and residents of the state of Pennsylvania, and the defendant corporation was a citizen, and therefore a resident, of West Virginia, the court had jurisdiction between the parties. The bill was filed by stockholders and creditors. It is not within the inhibition of equity rule 94. That rule applies to a bill brought by one or more stockholders against the corporation and other parties, founded on rights which may properly be asserted by the corporation. The present is a suit against the corporation itself, dominated by a president and board of directors, who are charged with wrecking the corporation for their own private ends. The purpose of the bill is to rescue the corporation. To assimilate that to the case provided for in rule 94, and to require the complainants to show that they had exhausted all effort in inducing the directors to convict themselves of fraud, is absurd. Hawes v. Oakland, 104 U. S. 450; County of Tazewell v. Farmers' Loan & Trust Co., 12 Fed. 752; Ranger v. Cotton-Press Co., 52 Fed. 615; Heath v. Railway Co., 8 Blatchf. 347, Fed. Cas. No. 6.306. The facts stated in the bill, if true, called for prompt and energetic interference by the court, to prevent the destruction of the corporation and the absorption of its assets by unfaithful conduct upon the part of the president and directors; and, at that stage of the case, these facts must have been assumed to be true. The wide scope of the injunction was called for by these facts. There was no error in granting it. The amended bill has changed the entire aspect of the case, and the decision of this court must rest upon its scope and effect. "Although it is the practice to call a bill thus altered [by amendments] an 'amended bill,' the amendment is in fact esteemed but as a continuation of the original bill, and as forming part of it, for both the original bill and amended bill constitute but one record; so much so that, when an original bill is fully answered and amendments are afterwards made to which defendant does not answer,

the whole record may be taken pro confesso generally." 1 Daniell, Ch. Prac. & Pl. (3d Am. Ed., by Perkins) 403; French v. Hay, 22 Wall., at page 246.

As to the second question: Could the circuit court of the United States for the district of West Virginia take jurisdiction of this bill as amended, and make the decree therein appointing a receiver and granting the injunction? The complainants are citizens and residents of the state of Pennsylvania, and the defendants are, one of them a corporation of the state of West Virginia, and the other a corporation and resident of the state of New York. Railroad Co. v. Koontz, 104 U. S. 5; Ex parte Schollenberger, 96 U. S. 377. No federal question is involved, and the jurisdiction depends upon the citizenship of the parties. The act of 1887, as corrected, but not altered, by the act of 1888 (24 Stat. 552; 25 Stat. 433), provides, among other things, as to the jurisdiction of circuit courts, as follows: "When the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence, either of the plaintiff or the defendant." In Strawbridge v. Curtiss, 3 Cranch, 267, Chief Justice Marshall says: "Each distinct interest should be represented by persons, all of whom are entitled to sue or may be sued in the federal court." This case is affirmed in New Orleans v. Winter, 1 Wheat. 91. In Coal Co. v. Blatchford, 11 Wall. 172, these two cases are construed by the supreme court thus: "In other words, if there are several coplaintiffs, the intention of the act is that each plaintiff must be competent to sue, and, if there be several defendants, each defendant must be liable to be sued, or the jurisdiction cannot be entertained." The same idea is expressed by the present chief justice in Anderson v. Watt, 138 U. S. 702, 11 Sup. Ct. 449: If "each of the indispensable adverse parties is not competent to sue or be sued, then the circuit court cannot maintain cognizance of the suit." In Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, in an action brought by a citizen of Massachusetts in the circuit court of the United States for the · Southern district of New York, against citizens of New York and a corporation of the state of Michigan, it was held that a corporation incorporated in one state only could not in that suit be compelled to answer in a circuit court of the United States held in another state, even though it has there its usual place of business, to a civil suit at law or in equity, brought by a citizen of a different state." This case was affirmed in Pacific Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44; Railway Co. v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859. Clearly, therefore, the court had no jurisdiction over the case as amended. The learned counsel for the complainant say that the Central Trust Company is neither an indispensable nor a necessary party, and that the presence of that company cannot oust the jurisdiction. Horn v. Lockhart, 17 Wall. 570; Walden v. Skinner, 101 U. S. 577. But can the complainants, who made the motion, and who asked the court to amend the bill, in order to make this corporation a party, now say that such an amendment was improper or unnecessary? They prayed for an injunction, and the presiding judge granted it, including the Central Trust Company by name in its provisions. Parties

cannot be permitted to induce action in the court below, and repudiate it in this court. The decree in this case was on demurrer to the amended bill. It is not a final decree. Equity rule 34 provides that, upon the overruling of any plea or demurrer, the defendant shall be assigned to answer the bill, or so much thereof as is covered by the plea or demurrer, the next succeeding rule day, or at such other period as, consistently with justice and the rights of the defendant, the same can, in the judgment of the court, be reasonably done. The case is here solely upon the order for injunction. It will be remanded to the circuit court, where, perhaps, the complainant may cure these difficulties by amendment. Conolly v. Taylor, 2 Pet. 564.

So much of the decree below as overrules the pleas to the jurisdiction, and grants the second injunction, is reversed, and the cause is remanded to the circuit court for such other proceedings as may be proper.