MONMOUTH INV. CO. et al. v. MEANS.

(Circuit Court of Appeals, Eighth Circuit. December 22. 1906.)

No. 2,409.

1. EXECUTORS AND ADMINISTRATORS—ACTIONS—ADMINISTRATORS WITH WILL ANNEXED—INTERVENTION.

Where, on the filing of a bill by one coexecutor against another, complainant filed a petition to remove his coexecutor, which was met by an answer and a cross-petition for the same relief with reference to complainant, whereupon the probate court removed both and appointed an administrator with the will annexed, the latter was entitled to intervene and maintain the bill alone for the benefit of the estate.

2. SAME—JURISDICTION.

Where the United States Circuit Court acquired jurisdiction of a suit by an executor against his coexecutor to prevent the latter from injuring the assets of the estate, no subsequent change in the personnel of the executors of the estate and the substitution of an administrator with the will annexed could oust such jurisdiction.

3. CORPORATIONS—HOLDING COMPANY—EFFECT.

Where a corporation was organized merely to be a holding company for the partnership adventures of decedent and M., and thereafter, by reason of the manipulation and control of M. through the company's subservient directors, it was wholly within his control after decedent's death, the corporation did not in reality represent the interests of the two partners.

**4. EXECUTORS—COEXECUTORS—RIGHT TO SUE.**

One executor may sue another under circumstances where questions arise between the estate and the derelict executor jeopardizing the rights of persons interested in the estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1662.]

**5. PARTIES—JOINDER.**

Where an executor or administrator refuses or cannot properly join in a complaint by a coexecutor for the benefit of the estate, such refusing executor may be made a codefendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, §§ 54, 55; vol. 22, Executors and Administrators, §§ 1766–1768.]

**6. COURTS—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP.**

Where a nonresident citizen who was a coexecutor of an estate was entitled to sue in the federal courts for the benefit of the estate, the fact that another executor qualified in the state of the situs of the estate did not preclude the nonresident executor from resorting to the federal courts.

**7. EXECUTORS AND ADMINISTRATORS—ACTIONS—JURISDICTION—REMOVAL OF EXECUTOR—EFFECT.**

Where a bill filed by an executor against his coexecutor sought to enjoin the latter from consummating and carrying out a wrongful scheme to despoil the estate and to get control of its interests represented by an outside corporation, the probate court had no jurisdiction in equity to enjoin defendant from consummating such act, and hence the fact that the probate court intervened by displacing the defendant executor with an administrator with the will annexed did not require a dismissal of the bill.

**8. EQUITY—ADEQUATE REMEDY AT LAW.**

The adequate remedy at law which will deprive a federal court of equity jurisdiction must be one as certain, complete, prompt, and efficient to attain the ends of justice as that in equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 151, 152.]

**9. INJUNCTION—INADEQUACY OF REMEDY AT LAW—RESTRAINING NEGOTIATION OF NOTE—CORPORATIONS—ACTION BY STOCKHOLDER.**

A corporation was formed as a mere holding company for the partnership adventures of decedent and M. Decedent was indebted to the corporation which held his stock to secure notes given therefor, and after his death it was discovered that he had appointed complainant, R., and M. his executors. Both qualified, but M. refused to permit R.'s election as a director, electing in his stead M.'s son, who was a young man without business experience, and secretly caused the directors of the corporation to vote himself $15,000 for back salary without either authority or consideration, for which M. caused the corporation to execute its note to him. M. refused to permit R. to examine the books until R. had consented to turn over $15,000 of the assets of the estate to the corporation, when the vote of back salary was discovered. *Held*, that the estate had no adequate remedy at law to protect its interest in the corporation as against such salary note, and was therefore entitled to an injunction to restrain M. from negotiating it.

**10. CORPORATIONS—OFFICERS—SALARIES.**

In the absence of some direct authorization or employment by the governing board of a corporation creating the obligation, the presumption is that the services of the officers of the corporation are performed without salary; so that the voting of back salary to the president of a corporation was without consideration, and void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1334–1337.]

**11. SAME—STOCKHOLDERS—RIGHT TO SUE.**

Equity rule 94, providing that a stockholder shall not maintain an action against the corporation for its benefit without a previous demand on

the managing directors to take action, has no application where the direct-ors are shown by the bill to be in league with the president who, through them, was using the corporation to defraud the complainant as executor out of the estate's interest in the corporation.

Appeal from the Circuit Court of the United States for the District of Colorado.

This is an appeal from an order of the United States Circuit Court for the District of Colorado granting a temporary injunction. The bill of complaint was filed on the 29th day of December, 1905, by Harry F. Ross-Lewin, as executor of the estate of George E. Ross-Lewin, against the Monmouth Investment Company, the State Investment Company, Henry A. McIntyre, Frederick A. Williams, and Newell W. McIntyre; the said Harry F. Ross-Lewin being a citizen of the state of Illinois and the defendants citizens of the state of Colorado.

The controversy, as shown by the bill of complaint and the affidavits, grows out of substantially the following state of facts: George E. Ross-Lewin, the brother of the complainant, and the defendant Henry A. McIntyre, both of Denver, Colo., were associated together in large real estate dealings and enterprises, in equal interests. In July, 1903, they had organized the Monmouth Investment Company, a Colorado corporation, as a holding corporation of their respective interests. The stock of this company was divided into 1,000 shares of the par value of $100 each. At the time of the organization of the company the interest of said McIntyre, except one share, stood in the name of the State Investment Company, one of the defendants alleged to have been in reality owned and controlled by said McIntyre, although in that company only one share of its stock stood in his name, the balance standing in the names of members of his family; and at the time of the death of said George E. Ross-Lewin, hereinafter stated, the stock of said Monmouth Investment Company stood one share in the name of Henry A. McIntyre, who was treasurer and manager thereof, one share in the name of said George E. Ross-Lewin, who was president thereof, one share in the name of Frederick A. Williams, one of the defendants herein, who was vice president thereof, 499 shares in the name of the State Investment Company, and 495 shares, being the shares of said George E. Ross-Lewin, stood in the name of said Henry A. McIntyre as trustee, claiming that they so stood as a method of pledging them for certain obligations of said George E. Ross-Lewin to the Monmouth Investment Company, and one share appearing to be unissued.

On the 14th day of July, 1905, the said George E. Ross-Lewin died at Denver, Colo., leaving a will, naming his brother, the said Harry F. Ross-Lewin, and the defendant Henry A. McIntyre, his executors, which will was duly probated in the county court at Denver, Colo., in the month of September, 1905; the said executors duly qualifying. The bill charges that prior to the funeral of said George E. Ross-Lewin, and prior to the arrival of the complainant at Denver, from his home in Chicago, for the purpose of attending the funeral and to the affairs of his brother's estate, a meeting, as complainant afterwards learned, was held by the surviving directors of said Monmouth Investment Company, to wit, Henry A. McIntyre and said Williams, at which meeting Newell W. McIntyre, one of the defendants, a son of said Henry A. McIntyre, to whom was then issued the unissued share of stock, was elected a director in the place of said George E. Ross-Lewin, and he was also made secretary—the said Newell W. McIntyre was then attending college in the East. These facts were not known to the complainant until subsequently, when he made inquiry respecting the vacant directorship, and suggested that as an executor of the estate he ought to be made a director. Mr. McIntyre declined to concede this, saying that he controlled the stock and was unwilling to permit the complainant to be upon the board of directors.

The bill further charges that, although the complainant was much dissatisfied with the foregoing refusal of said Henry A. McIntyre, he nevertheless, upon the promise of said Henry A. McIntyre that he would send him monthly statements in the nature of a trial balance showing the status of the company,

151 F.—11

and the further promise that he would not dispose of any important part of the property of the company or involve it in important transactions without informing the complainant so as to afford him an opportunity to interpose any objections he might have, acquiesced in what was done. But after sending such statement, of date August 31, 1905, and giving him some information, he did not keep his promise to send such monthly statements, although often requested thereto. Afterwards, about the 19th day of December, 1905, the complainant went to Denver for the purpose of attending to the affairs of the estate and looking after said company, to become informed of the true situation, and, upon calling on said Henry A. McIntyre, he refused him any access to the books of the company until the afternoon of the 22d of December, and thereupon he discovered what purported to be minutes of the board of directors, of date September 11, 1905, at which said Henry A. McIntyre, Newell W. McIntyre, and Frederick A. Williams were present, showing the following resolution offered by said Williams and adopted, to wit: "Whereas the board has never fixed the salary of Mr. McIntyre, the manager of this company, who for the past two years has been secretary and treasurer and sole manager, and who is now president and treasurer and sole manager of the business of this company, therefore be it resolved that the salary of Mr. McIntyre be fixed at six thousand dollars per annum, to date from July 1st, 1903, and until the further pleasure of this board."

The minutes of this meeting showed that said Henry A. McIntyre did not vote for said resolution. The bill charges that this action was wholly unwarranted, wrongful, and a fraud upon the estate; that at said meeting Henry A. McIntyre was authorized, in his discretion, to make any loans for the use of the company which he might deem necessary, and said minutes were signed by the secretary and by all three directors. The bill further charges that said Henry A. McIntyre is paying, from the funds of said Monmouth Investment Company, all the rent and office expenses, including the salaries of two employés, of the offices occupied in said city, not only by the said Monmouth Investment Company, but by said Henry A. McIntyre for his own purposes, and by the State Investment Company, who do a large business in said offices, using said employés.

It is further shown that the Monmouth Investment Company's assets consist largely of real estate in the city of Denver, subject to mortgages, and that the action of said Henry A. McIntyre and Frederick A. Williams in selecting said Newell W. McIntyre a director with said Williams, who have no beneficial ownership in the shares held by them, they became mere dummies in the hands of said Henry A. McIntyre, enabling him to take action at any time empowering him to dispose of any and all of the property of said Monmouth Investment Company in such manner as he pleases, without the knowledge or approval of the complainant or any opportunity to ascertain the real nature of the transactions or to guard the interests of the estate therein. While the Monmouth Investment Company is the owner of much valuable property, much of which is mortgaged, and has not paid any dividends or earned any money other than such as was needed to apply upon the indebtedness of the company, yet, if economically administered in the interest of the estate and stockholders, profitable results would come therefrom, but it will not be so managed by its present directors; and neither the estate nor the beneficiary thereof, who is a minor child of the testator, would derive any benefit therefrom. Unless said Henry A. McIntyre is restrained by the order of the court from paying himself the salary in arrears aforesaid, great detriment and injury to the company and estate will ensue therefrom. The bill alleges the refusal of said Henry A. McIntyre to agree to a dissolution of the corporation and the winding up of its affairs.

The prayer of the bill is for the appointment of a receiver and the dissolution of the company, and that said Henry A. McIntyre, Newell W. McIntyre, and Williams be enjoined from interfering with the affairs of the Monmouth Investment Company, or from disposing of or incumbering its assets, and that they be enjoined especially from paying the whole or any part of the salary voted or appearing to be voted by the directors of the company to the said Henry A. McIntyre.

It is disclosed by the affidavits at the hearing that the executors had collected $15,000 on the life insurance policy of the said George E. Ross-Lewin, which sum Henry A. McIntyre importuned the complainant to pay over to the Monmouth Investment Company; there being indebtedness from the estate to said company, which the complainant declined to do unless the estate could be safeguarded in giving this preference to the Monmouth Investment Company. When the complainant came to Denver in December, 1905, to look after matters, Henry A. McIntyre refused to permit him to see the books of the company until he had signed a petition to the probate court for and they had paid over to the Monmouth Company the $15,000, after which the complainant was permitted to see the books, when he discovered the vote to pay the said salary.

It was further developed on the hearing of the application for a temporary injunction that on the 29th day of December, 1905, the day the bill of complaint was filed, the complainant made petition to the probate court for the removal of said Henry A. McIntyre as coexecutor of the will, to which said McIntyre made answer and a cross-petition asking that the complainant be removed as such executor. Later, after the hearing of the application for a temporary injunction on the bill of complaint herein, the probate court appointed Rice W. Means administrator with the will annexed of the estate of George E. Ross-Lewin, who has since been substituted in the place of said Harry F. Ross-Lewin as appellee.

On the 24th day of January, 1906, the Circuit Court, after hearing, made its order granting a temporary injunction, directing that said Henry A. McIntyre individually and as president of the Monmouth Investment Company, and the said company, be enjoined from paying or negotiating said note of $15,000, or making any payments to the said McIntyre of the salary so voted to him, or any part thereof; and enjoining said McIntyre from receiving or collecting any such salary, or any part thereof, until the further order of the court. It further ordered and decreed that said company and McIntyre as president and individually be enjoined from borrowing on the credit of the company, or as an officer thereof, any sum or sums for any purpose whatever, until the further order of the court.

From this restraining order, the defendants below have appealed to this court.

Tyson S. Dines (E. E. Whitted and O. L. Dines, on the brief), for appellants.

Henry F. May (John S. Macbeth, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

The first criticism made upon the bill is that, its main purpose being to protect the estate of George E. Ross-Lewin from spoliation or loss, any right of action therefor was vested in the joint executors, and this complaint cannot, therefore, be maintained in the name of only one executor. If the law were that a court of equity could not obstruct and restrain acts of a coexecutor which he is threatening to execute for his individual benefit without the complainant joining the wrongdoer in the bill, it would present the anomaly of a party in his official capacity suing himself in his individual capacity, charging himself with fraud or wrongful acts to the injury of the estate committed to his protection. As said in Pearson v. Nesbit, 12 N. C. 315, 17 Am. Dec. 569:

"A suit at law is a contest between two parties in the court of justice; the one seeking and the other withholding the thing in contest. The same in-

dividual cannot be at the same time both the person seeking and the person withholding, for it involves an absurdity that a person should seek from himself or withhold from himself. * * * Where the same person is both plaintiff and defendant in different rights, as for himself on the one side and as executor on the other, this absurdity is involved."

See, also, McElhanon v. McElhanon, 63 Ill. 457; Perkins v. Se Ipsam, Administratrix, 11 R. I. 270.

It has been well said that whatever fraud creates equity will destroy. Its remedies and procedures for the circumvention of schemes and devices to cheat and defraud keep pace with the genius of the inventors of them.

In a case situated as this, if the presence in the suit of the wrongdoer, McIntyre, in his official capacity were necessary, the court would allow the bill to be amended by so naming him as a party defendant; it sufficiently appearing from the allegations that he could not join as co-complainant. Barry v. M., K. & T. Ry. Co. (C. C.) 27 Fed. 1. This amendment, however, is rendered unnecessary by the action of the probate court which has supervened in appointing Rice W. Means administrator with the will annexed.

The underlying purpose of the bill in its inception was to intercept the connivance of Henry A. McIntyre as an individual through and in the name of the Monmouth Investment Company, rendered subservient to his dictation through its board of directors, to prevent him from collecting the promissory note charged to have been wrongfully and without consideration obtained by him, and possibly through its use to destroy or injure the interests of the deceased, George E. Ross-Lewin, in said company. If the United States Circuit Court acquired jurisdiction to enjoin this threatened danger, no subsequent change in the personnel of the executors of the estate and the substitution of the administrator with the will annexed could oust that jurisdiction. Hardenbergh v. Ray, 151 U. S. 113, 14 Sup. Ct. 305, 38 L. Ed. 93; Sioux City Terminal Railway & Warehouse Company v. Trust Company of North America, 173 U. S. 99, 19 Sup. Ct. 341, 43 L. Ed. 628; Henderson v. Goode (C. C.) 49 Fed. 887; Belmont Nail Company v. Columbia Iron & Steel Company (C. C.) 46 Fed. 336. "Parties who are not named may intervene and make themselves actual parties, so long as the proceedings are in fieri and are not definitely closed by the course and practice of the court." Hotel Company v. Wade, 97 U. S. 21, 24 L. Ed. 917.

Nor can we assent to the contention of the learned counsel for the defendants that, although the complainant was a citizen of Illinois and the defendants to the bill were citizens of the state of Colorado, a proper arrangement of the parties, according to their real interests in the litigation, would place the Monmouth Investment Company, a citizen of Colorado, on the side of the complainant, and thereby destroy the diverse citizenship essential to the jurisdiction of the Circuit Court. Under the allegations of the bill the Monmouth Investment Company is but a holding corporation for the partnership adventures of said George E. Ross-Lewin and Henry A. McIntyre, and the State Investment Company, a Colorado corporation, is but a technical stockholder, owned and controlled by Henry A. McIntyre, hold-

ing the stock as collateral security. The Monmouth Investment Company, by reason of the manipulation and control of McIntyre, through the subservient directors, is wholly at his will, and as such is but an instrumentality to aid in the accomplishment of the very mischief of which complaint is made. In this aspect of the actual situation it is wholly allied with McIntyre in antagonism to the interests sought to be protected by the bill of complaint. There is persuasive authority for the contention that such a holding company as the Monmouth Investment Company does but represent in reality the interests of two partners, so that the death of one of the partners has practically left the other in absolute control. See Miner v. Ice Company, 93 Mich. 113, 53 N. W. 218, 17 L. R. A. 412; Einstein v. Schnebly (C. C.) 89 Fed. 540, 552.

One executor may sue another under circumstances where questions arise between the estate and the derelict executor jeopardizing the rights of persons interested in the estate. McGregor v. McGregor, 35 N. Y. 218, 220; Matthews v. Hoagland, 48 N. J. Eq. 455, 21 Atl. 1054; Petty v. Young, 43 N. J. Eq. 654, 658, 12 Atl. 392. Resulting from this is the rule that, where an executor or administrator refuses to or cannot join properly in the complaint, he may be made a co-defendant. And the fact that another executor may have qualified in the state of the situs of the estate does not disqualify him to sue in the federal court where he is in fact a nonresident citizen. Rice v. Houston, Administrator, 13 Wall. 66, 67, 20 L. Ed. 484; Amory v. Amory, 95 U. S. 186, 24 L. Ed. 428; Wilson v. Smith (C. C.) 66 Fed. 81; Coal Company v. Blatchford, 11 Wall. 172, 20 L. Ed. 179.

Further contention is made that the bill should no longer be entertained because of the fact, which has supervened since the jurisdiction of the Circuit Court attached, that the probate court has intervened by displacing the offending executor with an administrator with the will annexed. This, we hold, is a misconception both as to the extent of the interposition and the office of the probate court. It is a court of limited jurisdiction. It has supervisory control over administrators and executors, and may remove them for cause and appoint another administrator or executor. It can exercise supervisory control over them to compel an accounting and settlements, and the like; and can direct them in the management of the property of the estate. But it has no jurisdiction in equity to enjoin the defendants from consummating and carrying out the wrongful scheme alleged in the bill of complaint to despoil the estate, and to get control of its interests represented by an outside corporation. In short, it has no jurisdiction to grant the preventive and preservative writ of injunction essential to obstruct the threatened injury in question to the estate.

It is further urged in this connection that an adequate remedy at law exists to rectify or restore any loss of the estate possible to result from the alleged acts of McIntyre. The adequate remedy at law which will deprive a federal court of equity jurisdiction must be one as certain, complete, prompt, and efficient to attain the ends of justice as that in equity. Boyce v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Oelrichs v. Spain, 15 Wall. 211, 225, 21 L. Ed. 43; Hayden v. Thomp-

son, 71 Fed. 63, 17 C. C. A. 594; Williams v. Neely, 134 Fed. 10, 67 C. C. A. 171, 69 L. R. A. 232; Brun v. Mann, 151 Fed. 145, recently decided by this court. "Where equity can give relief, the plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." Davis v. Wakalee, 156 U. S. 688, 15 Sup. Ct. 555, 39 L. Ed. 578.

No action at law would lie at the suit of the legal representative of the estate of George E. Ross-Lewin consequent upon the issue of the note for $15,000 until after it was paid. In the meantime the note might be negotiated to a claimed bona fide purchaser. A judgment thereon against the Monmouth Investment Company in the straitened condition of its affairs might work its ruin and destroy the interest of the estate therein. McIntyre, who may be solvent now, might then be wholly insolvent. Under such conditions the preventive remedy by injunction is ever to be commended as salutary and "efficient to the ends of justice."

With much force counsel for appellants assails that feature of the bill which seeks to have a receiver appointed for the Monmouth Investment Company and for a dissolution of the corporation. It is to be conceded that the effect of placing a corporation in the hands of a receiver, displacing its governing board of directors, incidentally works its practical dissolution. Sidway v. Missouri Land & Live Stock Company (C. C.) 101 Fed. 481, 483; Republican Mountain Silver Mines v. Brown, 58 Fed. 644, 7 C. C. A. 412, 24 L. R. A. 776. The Supreme Court of Colorado, in People ex rel. Daniels v. District Court, 33 Colo. 293, 80 Pac. 908, has held that the only statute in the state authorizing courts of equity to dissolve corporations is limited to an action for the benefit of creditors, and does not lie at the suit of stockholders.

It is not necessary, however, on this appeal for the court to discuss or pass upon that feature of the bill. The Circuit Court only made a temporary order enjoining the defendant McIntyre from transferring or collecting the $15,000 note, and the Monmouth Investment Company from paying the same, or from borrowing money on the credit of the company. This is the only action of the Circuit Court here for review. And this brings us to the merits of this appeal.

In Hawes v. Oakland, 104 U. S. 450, 460, 26 L. Ed. 827, Mr. Justice Miller, in discussing the question as to the circumstances and conditions under which a stockholder may have a standing in a court of equity for relief against an act done or threatened by the governing board of the corporation, lays down the following:

"Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the interests of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of

ine corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity."

The facts alleged and shown prima facie bring the case under review within the operation of said rules.

George E. Ross-Lewin and Henry A. McIntyre were so related to each other in said holding corporation as to impose upon McIntyre, on the decease of Ross-Lewin, the utmost frankness and fairness in his dealings with the affairs of the corporation. The correspondence between the parties presented in the affidavits in behalf of the appellants shows that the deceased had the utmost confidence in the friendship and integrity of McIntyre. He trusted him implicitly; and he expressed this reliant confidence in his last will and testament by making him a coexecutor with his brother. When his partner and friend died, he should have regarded and treated the property of the deceased and the coexecutor of his will as he would have treated his friend in his life time. It would have been remarkable conduct on his part if during the life of George E. Ross-Lewin, without notice to him, he had called a meeting of the board of directors of said company and elected, in lieu of George E. Ross-Lewin, his son—a young man without business experience, attending college in an eastern state. And it certainly would have shocked the confidence of his trusting friend if, without notice to him, on the substitution of his son as director, he had caused such a resolution as the one in question to be passed by the vote of his son and the other director Williams, voting himself $15,000 for past salary; the resolution itself reciting that no salary had ever been fixed by the board of directors. While the dead body of his friend was yet green, before the funeral, a meeting of the board of directors was called and his son elected director, and said resolution was afterwards put through without any notice whatever to Harry F. Ross-Lewin. The indecent haste with which this was done, and the instrumentality resorted to to accomplish it, create grave apprehension that the defendant Henry A. McIntyre was conscious of its irregularity, and gives color to the imputation that he was attempting to take from the estate that which in law did not rightfully belong to him.

In the absence of some direct authorization or employment by the governing board creating the obligation, the presumption is that McIntyre as director and president, just as his associates, rendered whatever services he performed without salary; and the voting of such back salary was without consideration and void. National Loan & Investment Company v. Rockland Company, 94 Fed. 335, 336, 337, 36 C. C. A. 370. The case of Doe v. Northwestern Coal & T. Co. (C. C.) 78 Fed. 62, furnishes an instance akin to this, of the president of a corporation putting his son in as director and having himself voted a back salary. The act was denounced as fraudulent. See, also Brown v. Republican Silver Mines Company, 17 Colo. 421, 425, 30 Pac. 66, 16 L. R. A. 426; Ruby Chief Company v. Prentice, 25 Colo. 4, 7, 52 Pac. 210; Clark & Marshall, Private Corporations, vol. 3, § 673. A chancellor should probe such a transaction to the very marrow. It is a fit subject for the scrutiny and investigation of a court of equity.

It is urged that the complainant representing the stockholder had not brought himself within the provisions of equity rule 94 by laying the foundation of right to proceed by averring a previous demand upon the managing directors to take action.   The rule has no application to a situation like this, where the directors are shown by the bill to be in league with the defendant Henry A. McIntyre, who, through them, is using the corporation itself to wrong the complaining party as executor of the interests of the estate in the corporation.   Young v. Alhambra Min. Co. (C. C.) 71 Fed. 810; Excelsior Pebble Phosphate Co. v. Brown, 74 Fed. 321, 20 C. C. A. 428.   In administering justice the law never demands an idle ceremony.

On the showing made we hold that the action of the Circuit Court. in granting the temporary restraining order against the negotiation, collection, or payment of the note in question was proper. · It appears, however, from the bill and affidavits, that the Monmouth Investment Company is largely indebted, much of its property subject to mortgage, and, as its operation might be seriously crippled without the means to meet accruing interest and its debts and to care for its properties, on the remand of the cause for further proceeding, the Circuit Court is directed to amend the temporary decree by adding after the words, "until the further order of this court," the following: "With leave to either of the parties in interest, or the administrator with the will annexed, to apply to the court, on notice, for authority to borrow money on the credit of the Monmouth Investment Company for the proper protection of the property and credit of the company pendente lite."

With this amendment the decree of the Circuit Court is affirmed; the costs of this appeal to be taxed against the appellants.