## SIRBECK v. REORGANIZED DIVIDE ANNEX MINING COMPANY

No. 2740

November 3, 1926.                    250 P. 245.

1. CORPORATIONS—CONTROL.

No combination of stockholders less than all will be permitted to control company in their interest alone.

2. CORPORATIONS—COMPANY NOT LIABLE FOR SERVICES OF ONE WHO ACTS FOR PRESIDENT'S SOLE BENEFIT.

In action by acting secretary of company for extra services rendered on trip made at instance of president thereof, where plaintiff was employed and paid by president, and it did not appear there was meeting of board of directors, or that any of them knew plaintiff was acting as secretary, *held*, since president acted for his personal interest, there could be no presumption of ratification of employment by company.

C. J.–CYC. REFERENCES

CORPORATIONS—14 C. J. sec. 1292, p. 851, n. 81 (new) ; 14a C. J. sec. 2280, p. 428, n. 64 ; p. 429, n. 65.

APPEAL from Seventh Judicial District Court, Esmeralda County; *J. Emmett Walsh,* Judge.

Action by William E. Sirbeck against the Reorganized Divide Annex Mining Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, the defendant appeals. **Reversed. Rehearing denied.**

*Ryland G. Taylor,* for Appellant:

*J. A. Houlahan* and *Wm. J. Forman,* for Respondent:

(Briefs similar to those in Sirbeck v. Sunbeam Divide Mng. Co., next preceding case.)

## OPINION

By the Court, DUCKER, J. :

This action was instituted to recover a judgment for services rendered as acting secretary and treasurer of the defendant company, for extra services rendered on a trip to New York, and for a part of expenses incurred on such trip. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, the defendant has appealed.

Several errors are assigned and urged upon our consideration; but, taking the view we do, it is necessary to consider only one of them. It is the contention of the appellant that the plaintiff was never employed by the defendant company, and that it never ratified such employment on its behalf. It is asserted on behalf of the company that Kenneth Hauer, of 51 Central Avenue, Cincinnati, the president of the company, employed the plaintiff as his personal representative.

The only witness to testify was the plaintiff. The testimony in the case shows that on the 9th day of October, 1922, Hauer wrote to the plaintiff:

"I will pay you a salary of $50 per month as secretary of the Annex to look after their property and my best interest."

Thereafter the plaintiff acquired possession of the books of the company, and in fact acted as secretary of the company for about two years. It does not appear that there was ever a meeting of the board of directors of the company after the plaintiff proceeded to act as such secretary, and there is not a scintilla of evidence that any director of the company, other than Hauer, ever knew of his acting as such secretary. The testimony shows that, when the plaintiff entered upon the discharge of the duties of secretary, there were $6 in the treasury of the company, and that no other funds ever reached that depository. It also appears that Hauer paid by his personal check plaintiff's salary as secretary for the period of about 21 months—the only payments ever made on account thereof. It also appears from the plaintiff's testimony that, at the time he began to act as secretary of the company, stock in the defendant company had been issued as follows: To Kenneth Hauer (the president), 298,000 shares; to various individuals, 154,000 shares. The plaintiff also testified as follows:

"Q. During the time that you were acting as secretary, didn't he (Hauer) acquire further stock? A. He did.

"Q. How much more? A. 500,000 at one cent; 300,000 at 2½ cents; and 243,541 at 3 cents.

"Q. Making how much? A. All there was in the treasury. * * *

"Q. Did you make any transfers of the stock, as secretary, to Mr. Hauer? A. I did.

"Q. How did you come to do that? A. On his instructions.

"Q. Were those instructions oral or written? A. Written and telegraph. * * * "

On March 21, 1924, the plaintiff wrote a letter to Hauer, in which he said, among other things:

"Also be sure and get a resolution from the board of directors to file with the minutes for the sale of the treasury stock and have it dated previous to the date of the certificates. This will clear me, when I have to turn the books over to government inspectors, in case they should come in at any time."

There is no evidence that a directors' meeting was ever held, and none that they ever knew of any of the transactions mentioned herein, as we have stated.

The plaintiff also testified that he went on a trip east at the request of Hauer, made by telegram, early in May, 1924. Hauer's telegram is dated May 3, 1924, and reads:

"Your letter April twenty-eighth received. If you are coming east suggest you come at once or at your earliest convenience. No doubt you could assist to close a deal on Annex and Sunbeam. Come direct to Cincinnati and advise me in advance of your coming when you will arrive."

This is the only telegram in the record alluding to plaintiff's going east.

This is the evidence upon which the plaintiff bases his right to recovery. In our opinion, it utterly fails to show any liability on the part of the defendant company. The theory of the plaintiff is that Hauer, the president of the company, is the company, and hence the company cannot escape liability.

While we are inclined to the opinion that a mere shell of a corporation, used as a cloak to promote fraud, when an individual is in fact the owner of all of the stock,

cannot protect itself from the acts of such owner by claiming that it never authorized a contract sued upon, nor ratified it, we do not deem it necessary to decide the point in the instant case, since such is not the fact herein. Hauer, in offering employment to the plaintiff, said:

"I will pay you a salary of $50 per month as secretary of the Annex to look after their property and my best interest."

By this letter Hauer bound himself, and not the company. He did not pretend to speak for the company, but for himself. It is a personal obligation. But, if we waive aside this phase of the case, the judgment cannot be justified upon the theory above stated, for, as a matter of fact, Hauer was not the sole owner of stock; he was not the company. It appears from the testimony of the plaintiff that, when he began to act as secretary of the company, Hauer owned 298,000 shares of stock, and that other individuals owned 154,000 shares. This is far from showing that Hauer was at that time the company. So far as appears, there may have been, at the time of the employment, 5,000 individual stockholders. It is true that the plaintiff, after he became the acting secretary, on the request of Hauer, transferred to Hauer 1,043,541 shares of the capital stock of the company for a mere pittance. The plaintiff realized that he had no right to do this, because he later wrote, as we have shown, asking that Hauer have the board of directors ratify his action in issuing the stock to Hauer so as to "clear" him when the government inspectors came around.

1. It is a well-recognized rule that no combination of stockholders of a corporation less than all will be permitted to manage or control a company in their interest alone. This is equally true of an individual stockholder. Glengary Con. M. Co. v. Boehmer, 28 Colo. 1, 62 P. 839; Dunbar v. Amer Tel. & T. Co., 224 Ill. 9, 79 NE. 423, 115 Am. St. Rep. 132, 8 Ann. Cas. 57; Jones v. Missouri-Edison Co., 144 F. 765, 75 C. C. A. 631; Monmouth Inv. Co. v. Means, 151 F. 159, 80 C. C. A. 527; Wheeler v.

Abilene, etc., 159 F. 391, 89 C. C. A. 477, 16 L. R. A. (N. S.) 892, 14 Ann. Cas. 917.

2. Since Hauer acted for his personal interest alone, we will not assume that he brought the facts of the case to the attention of the board of directors, and, there being no proof that he did, there can be no presumption of ratification of the employment of the plaintiff by the company.

For the reasons given, it is ordered that the judgment be reversed.

### ON PETITION FOR REHEARING

February 1, 1927.

*Per Curiam:*

Rehearing denied.